889 So.2d 200 (2004)
Patrick SANTIAGO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-264.
District Court of Appeal of Florida, Fourth District.
December 15, 2004.
*201 Carey Haughwout, Public Defender, James W. McIntire, Assistant Public Defender, and Jacob Noble, Certified Legal Intern, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Appellant, Patrick Santiago, was placed on community control after pleading no contest to burglary of a conveyance and petit theft. Santiago was sentenced to one year community control to be followed by five years of probation. Among the terms of Santiago's community control were limitations on his ability to leave his residence (i.e., only for work, or with the express approval of his community control officer) and a requirement that he commit no new substantive offenses. The State ultimately filed an Affidavit of Violation of Community Control for domestic battery, leaving his approved residence without permission, and resisting arrest without violence. The trial court revoked Santiago's community control on each of these grounds. We find that revocation based on allegations which were supported solely by hearsay was improper. Nevertheless, we affirm Santiago's revocation because there was sufficient non-hearsay evidence to warrant revocation based on the charge of resisting arrest without violence.
The events which led to the allegations of violation are as follows. On October 18, 2003, Deputy Mellott was dispatched to a domestic violence call at Santiago's Wife's home.[1] The Wife told Mellott that Santiago was at her residence earlier and slapped her in the face with an open hand after the two got into a confrontation. Mellott witnessed the Wife in an upset and emotional state evidenced by red eyes from crying. The Wife also had red marks on her face. The Wife and the Wife's Mother, who corroborated the Wife's story, informed Mellott that Santiago was the aggressor. Mellott took a taped statement from the Wife and also photographed her injuries. The Wife's taped statement was consistent with what she told Mellott. Deputy Rodriguez went to Santiago's house and spoke with an intoxicated Santiago who denied ever leaving his house. Rather, Santiago claimed that his Wife came to his house whereupon he informed her that he wanted a divorce and she was upset. Another officer on the scene, Sergeant Michael, attempted to detain and handcuff Santiago. When Santiago resisted putting his hands behind his back to be handcuffed, he was shot with a taser gun *202 three times before he was eventually securely handcuffed.
On October 22, 2003, the State filed an Affidavit of Violation of Community Control alleging among other things that Santiago (1) committed a new substantive offense, namely battery on his Wife, (2) failed to remain at his residence, and (3) resisted arrest without violence. A VOP hearing was conducted at which the defense objected several times to the admission of hearsay evidence. Notwithstanding, the Wife's taped statement was played and the three police officers, Santiago's probation officer and Santiago testified. Neither the Wife nor her mother testified. The trial court ultimately found that the State met its burden of proof, finding that Santiago willfully and substantially violated the conditions of his community control, stating:
I do believe [Santiago] did commit a domestic battery upon [the Wife] by slapping her on the face with an open hand. Further, I find he failed to remain confined [ ] at the approved residence 2961 NW 6th Street, Pompano Beach, Florida. Further, he did [ ] violate the law by resisting arrest without violence.
Finally, the trial court noted "while hearsay is a part, it's not the sole basis particularly as to the violation of [resisting arrest without violence]."
Santiago's first issue on appeal is that the trial court erred by relying exclusively on hearsay in revoking his community control after finding that he committed a new substantive offense, i.e., battery, and left his approved residence without permission. "[T]he requirement to revoke probation, that there must be a willful and substantial violation of a condition thereof, must be shown by the State by a preponderance or the greater weight of the evidence." 15 Fla. Jur.2d Criminal Law § 2197. See State v. Jenkins, 762 So.2d 535, 536 (Fla. 4th DCA 2000); Hern v. State, 747 So.2d 1039, 1040 (Fla. 4th DCA 1999). "While hearsay evidence is admissible in probation revocation proceedings, hearsay alone is insufficient to establish a violation of a condition of probation." Kiess v. State, 642 So.2d 1141, 1142 (Fla. 4th DCA 1994). See Smith v. State, 690 So.2d 733, 734 (Fla. 4th DCA 1997); Brown v. State, 659 So.2d 1260, 1261-62 (Fla. 4th DCA 1995).
At bar, the trial court heard hearsay evidence consisting of second-hand statements and a taped statement by the Wife that Santiago was at her house and slapped her in the face. There was also non-hearsay testimony from Deputy Mellott that he witnessed red marks on the side of her face which appeared to validate the Wife's story. The question presented is whether the evidence in whole was legally sufficient to sustain the revocation on these grounds.
In Colwell v. State, 838 So.2d 670, 671-72 (Fla. 2d DCA 2003), the second district addressed the very issue of a victim's hearsay statements coupled with after-the-fact general observations by a police officer. In Colwell, the State presented only one witness, a deputy, at the revocation hearing to substantiate a domestic battery. Id. at 671. The deputy encountered Colwell's wife and testified that she said that Colwell had grabbed her. Id. The deputy described Colwell's wife's condition as "intoxicated, hysterical, very frantic and excited, although she was not crying." Id. The deputy observed a faint red mark on Colwell's wife's neck, which she said had resulted from Colwell grabbing her there. Id. The court held:
While the faint red mark on Mrs. Colwell's neck and her behavior may have suggested that improper contact occurred, the deputy's observations alone *203 did not provide a sufficient evidentiary link to the perpetrator of the alleged domestic battery. That the red mark on her neck may have resulted from Mr. Colwell grabbing her suffers from the same hearsay deficiency as the remainder of the deputy's testimony. Furthermore, Mrs. Colwell's hysterical demeanor may have been due to her intoxicated state; her hysteria does not otherwise prove the domestic battery.
Id. at 672.
Likewise, in Blair v. State, 805 So.2d 873, 876 (Fla. 2d DCA 2001), the State presented only limited evidence to prove Blair violated his probation by committing a domestic battery on his wife. The deputy who responded to the crime scene testified to statements the victim made, namely that Blair grabbed her arm and wrist and dragged her through the house. Id. The deputy also testified to observing the disarrayed condition of the house. Id. The second district similarly held:
The record reveals the only evidence linking Blair to the commission of a battery was the hearsay testimony of the deputy concerning what the victim said had occurred. While the victim's physical state and appearance of the residence suggested to the deputy that a struggle had occurred, the deputy's observations could not connect Blair to the alleged battery.
Id. at 876-77.
In the case sub judice, the trial court relied upon the victim's and the victim's mother's hearsay statements and the circumstantial evidence of red marks on the victim's face. Analogous to Colwell and Blair, although the victim's injuries suggested to the deputy that a battery may have occurred, the deputy's observations could not connect Santiago to the alleged battery. Moreover, that the red marks on her cheek may have resulted from Santiago's slap suffers from the same hearsay deficiency as the remainder of the State's case. It is quite possible that there is another explanation for the red marks wholly independent of Santiago. Likewise, the only evidence placing Santiago away from his approved residence was hearsay. Therefore, we find that the trial court abused its discretion in revoking Santiago's probation on these violations.
Santiago's second issue on appeal is that the trial court erred in revoking his community control and subsequent probation by finding that he willfully and substantially violated the terms of his community control by resisting arrest without violence. "The elements of resisting an officer without violence require that (1) the officer be engaged in the lawful execution of a legal duty and (2) the defendant's action constitute obstruction or resistance of that lawful duty." J.P. v. State, 855 So.2d 1262, 1265-66 (Fla. 4th DCA 2003) (citation omitted). The trial court was presented with testimony from the deputies at the scene that Santiago was being detained, with probable cause, for suspicion of a domestic battery. Santiago was initially compliant but quickly thereafter hesitated and became defiant. Santiago was asked three times to comply before he was shot with a taser gun. The officers repeated this command and Santiago again failed to comply. Thereafter, Santiago received another taser shot. Then, Santiago attempted to get up and was shot for the third time. Finally, Santiago complied and was securely handcuffed. Contrarily, the trial court was also presented with conflicting testimony from Santiago that he never failed to comply with any of the officers' demands.
"[T]he role of the trial court is to weigh the credibility of witnesses and to resolve evidentiary conflicts, and on truly discretionary matters, the appellate court must *204 recognize the trial court's superior vantage point." Holden v. State, 877 So.2d 800, 801-802 (Fla. 5th DCA 2004) (citation omitted). We find that the trial court did not abuse its discretion in weighing the credibility of the testimony before it and reaching a conclusion that Santiago resisted arrest without violence. Additionally, because each one of the alleged violations alone was sufficient to revoke community control, we affirm the trial court's decision and remand only for the trial court to correct the judgment of conviction so that it conforms with this opinion.
AFFIRMED in part, REVERSED in part.
WARNER and GROSS, JJ., concur.
NOTES
[1] Santiago was married but living apart from his Wife, who was living at her mother's home.