918 So.2d 431 (2006)
Richard J. COLUCCI, Appellant,
v.
KAR KARE AUTOMOTIVE GROUP, INC., Appellee.
Nos. 4D05-1759, 4D05-2148.
District Court of Appeal of Florida, Fourth District.
January 25, 2006.
*433 William H. Pincus of the Law Offices of William H. Pincus, West Palm Beach, for appellant.
Denise J. Bleau and H. Michael Munuz of Buckingham, Doolittle & Burroughs, LLP, Boca Raton, for appellee.
TAYLOR, J.
Richard J. Colucci appeals a preliminary injunction entered in favor of Kar Kare Automotive Group, Inc., that prohibits him from competing anywhere in the United States for a period of five years. Kar Kare alleged that Colucci breached a covenant not to compete by conducting business in the State of Florida. The trial court granted Kar Kare's motion for a preliminary injunction on the ground that the parties agreed to a covenant not to compete that was subsequently amended to prohibit competition anywhere in the United States for a period of five years. We conclude that the trial court erred in finding that Kar Kare had a legitimate business interest upon which to base a valid covenant not to compete. Because *434 there was no valid covenant not to compete, Kar Kare could not prove the necessary elements of a temporary injunction.
On March 4, 1999, the parties entered into a purchase agreement whereby Colucci transferred 100 percent ownership in his business, "A to Z Imprint Supply, Inc.," a Massachusetts corporation, to Kar Kare, and simultaneously became an employee of Kar Kare. Subsequently, on March 31, 1999, Colucci and Kar Kare entered into a Non-Competition Agreement, which included a covenant not to compete that precluded Colucci, for a period of five years from the date of termination of his employment with Kar Kare, from supplying automotive sales aids anywhere in the United States. Notably, the covenant explicitly provided for a "carve-out," an exception allowing Colucci to conduct business within one hundred miles of his home in Florida.
After approximately eight months with Kar Kare, Colucci terminated his employment. On December 17, 1999, Kar Kare sent a letter to Colucci reflecting an agreement reached by telephone ("Letter Agreement"). By the terms of the agreement, Colucci and Kar Kare terminated Colucci's employment relationship. The agreement provided:
The parties agree there is in full force and effect a "Non-Competition Agreement" between them dated as of March 31, 1999. They further agree as a condition of this Agreement that ... all conditions contained [in the "Covenant Not to Compete"] shall remain in full force and effect unless modified by this Agreement. Further the term of all terms and conditions shall be extended to expire March 31, 2007. The Employee further agrees not to compete in any way whatsoever with any business of the Employer that exists at the time of the execution of this Agreement. This Agreement by the Employee not to compete, shall apply anywhere in the United States of America and shall restrict the Employee from competing with the Employer in any way, including acting as an individual salesperson and as further described in the "Non-Competition Agreement" referenced herein.
In consideration for this agreement, Colucci was to receive $50,000.
In September/October 2001, Colucci and Kar Kare entered into a Settlement Agreement as a result of disputes regarding alleged breaches by both parties. By the terms of the Settlement Agreement, Colucci agreed that the Non-Competition Agreement of March 1999[1] would "remain in full force and effect." The Settlement Agreement further stated that "[t]he only obligations or claims surviving the signing of this agreement shall be those obligations still existing under the Covenant Not to Compete signed by Colucci, the Commercial Promissory Note, Limited Guarantees signed by E[dward] Bonanni and J[ohn] Bonanni, and the Second Trust Deed signed by Kar Kare in favor of Colucci, as well as the terms and conditions set forth in this Settlement Agreement." The settlement agreement made no reference to the Letter Agreement.
On February 8, 2005, Kar Kare filed a Verified Complaint for Temporary and Permanent Injunctive Relief and Damages against Colucci. The complaint alleged that as part of the sale of his business, Colucci entered into a "Non-Competition Agreement," the terms of which restricted him from "either directly or indirectly, carry[ing] *435 on or engag[ing]" in business related to the supplying of automotive sales aids for a period of five years. Kar Kare alleged that Colucci breached the Non-Competition Agreement by conducting business with Kar Kare's customers. Kar Kare requested a temporary and permanent injunction prohibiting Colucci from further violating the Non-Competition Agreement.
On March 11, 2005, an evidentiary hearing was held on Kar Kare's motion for injunction. Both parties testified to their understanding of the Non-Competition Agreement and the Letter Agreement. Colucci stated that he believed the Letter Agreement simply extended the period of the Covenant Not to Compete by two yearsfor which he received $50,000but that it did not affect the carve-out. Consistent with this understanding, Colucci has limited his business to the carve-out. Edward Bonanni, CEO and President of Kar Kare, testified that the purpose of the Letter Agreement was to "pay[] $50,000 for [Colucci] to retire from the business until 2007, period." He further stated that he did not think the Settlement Agreement had any impact on the Letter Agreement.
The trial court issued an order granting Kar Kare's emergency motion for preliminary injunction. The court found that the parties entered into a Non-Competition Agreement whereby Colucci would not compete with Kar Kare for five years. By its terms, the Covenant Not to Compete contained in the Non-Competition Agreement prohibited Colucci from competing anywhere in the United States, with the exception of a 100 mile radius from Colucci's home in Florida. Kar Kare paid Colucci $25,000 in consideration for the Covenant Not to Compete. The court further found that, when Colucci's employment was terminated in Fall 1999, the parties entered into the Letter Agreement. The court found Colucci has been conducting his business within 100 miles of his home since 2003.
The court concluded that "Kar Kare proved the existence of restrictive covenants set forth in the Non-Competition Agreement and the Letter Agreement dated December 17, 1999" that prohibit Colucci from using the name, "A to Z Imprints," and competing with Kar Kare through 2007. Further, the court found Kar Kare to have proved the existence of legitimate business interests that justify the restrictive covenants and the violation of such covenants. The court held that the "obvious import of the Letter Agreement was to broaden the scope of the Non-Competition Agreement in exchange for greater consideration paid to Colucci."
The court noted that the Settlement Agreement was not introduced into evidence, but that even if it had been introduced, the agreement "did not credibly suggest ... a modification to the Non-Competition Agreement or the Letter Agreement" such that the 100-mile carve-out was still effective. Thus, the court concluded, Kar Kare had a substantial likelihood of success on the merits of its claim, and the court ordered a temporary injunction.
At a May 2, 2005 hearing on Colucci's motion to dissolve, the trial court took testimony on the Settlement Agreement. The court held that the unambiguous intent of the Settlement Agreement was to preserve the Covenant Not to Compete as amended by the Letter Agreement. It further held that even if the Settlement Agreement could be construed as ambiguous, parol evidence nevertheless supported the existence of the amended covenant. The court denied Colucci's motion.
This court reviews temporary injunctions for abuse of discretion. Stephan *436 Co. v. Faulding Healthcare (IP) Holdings, Inc., 844 So.2d 676, 678 (Fla. 4th DCA 2003); see Raulerson v. Mitchell, 916 So.2d 891 (Fla. 4th DCA 2005). The Florida Supreme Court has stated that "[t]he scope of review [of injunctions] is limited. As a general rule, trial court orders are clothed with a presumption of correctness and will remain undisturbed unless the petitioning party can show reversible error." Smith v. Coalition to Reduce Class Size, 827 So.2d 959, 961 (Fla.2002) (quoting Operation Rescue v. Women's Health Ctr., 626 So.2d 664, 670 (Fla.1993)).
The supreme court further noted the distinction in the type of review employed when an order rests on factual, as opposed to legal, grounds:
To the extent it rests on factual matters, an order imposing a permanent injunction lies within the sound discretion of the trial court and will be affirmed absent a showing of abuse of discretion.... To the extent it rests on purely legal matters, an order imposing an injunction is subject to full, or de novo, review on appeal.
Id.
Thus, this court must apply a "hybrid" standard of review. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.
Colucci asserts that the Settlement Agreement reinstated the parties' original covenant not to compete, which contained the carve-out. The court below based its determination of the enforceability of the restrictive covenant on its interpretation of the Non-Competition Agreement, the Letter Agreement, and the 2001 Settlement Agreement. This court reviews de novo the trial court's interpretation of these agreements. See Maleki v. Hajianpour, 771 So.2d 628, 630-31 (Fla. 4th DCA 2000).
By the terms of the Non-Competition Agreement, the parties agreed that Colucci would refrain from competing with Kar Kare for five years, with the exception of business conducted within the 100-mile carve-out. When the parties parted ways in Fall 1999, they executed a Letter Agreement, which explicitly provided for the continuance of the Non-Competition Agreement "in full force and effect." The agreement stated that the Covenant Not to Compete would remain in effect unless modified by the Letter Agreement. The agreement continued:
The Employee further agrees not to compete in any way whatsoever with any business of the Employer that exists at the time of the execution of this Agreement. This Agreement by the Employee not to compete shall apply anywhere in the United States of America and shall restrict the Employee from competing with the Employer in any way....
(Emphasis supplied). This limitation clearly modified the Covenant Not to Compete contained in the Non-Competition Agreement signed by the parties in March 1999. Further, the Letter Agreement provided $50,000 in consideration for this modification.
Although Colucci admits  "for purposes of this appeal" only  that the Letter Agreement eliminated the 100-mile carve-out, he insists that when Kar Kare stopped making payments on its promissory note, thereby breaching the Non-Competition Agreement, it forfeited the right to enforce the Covenant Not to Compete as modified by the Letter Agreement. Colucci points to paragraph five of the Non-Competition Agreement, which states: "The provisions of Non-Competition ... of this agreement shall not be applicable ... if the Purchaser fails to pay or is in default of any terms *437 and provisions of the Promissory Notes...." Bonanni conceded that he stopped payments of the Promissory Note to Colucci.
This court has held that an employer's breach of an employment agreement may be considered in determining whether to grant a temporary injunction to enforce a covenant not to compete. Northern Trust Invs. v. Domino, 896 So.2d 880, 881 (Fla. 4th DCA 2005). Specifically, "[h]aving committed the first breach, the general rule is that a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contractual liability." Benemerito & Flores, M.D.'s, P.A. v. Roche, M.D., 751 So.2d 91, 93 (Fla. 4th DCA 1999) (quoting Bradley v. Health Coal., Inc., 687 So.2d 329, 333 (Fla. 3d DCA 1997)).
In the instant case, Kar Kare's failure to make payments on the promissory note was a breach of the Non-Competition Agreement that released Colucci from the terms of the (unmodified) Covenant Not to Compete. We are required to consider a party's breach of contract defense, if one is raised. Id. at 93. Colucci, however, does not assert that the breach nullified all restrictions on his ability to compete. Instead, he argues that the original Covenant Not to Compete (which included the carve-out) was reinstated by the 2001 settlement agreement.
The Settlement Agreement states that "Colucci agrees that the Non-Competition Agreement signed by him dated [March] 31, 1999, shall remain in full force and effect." The Settlement Agreement further provides that "[t]he only obligations or claims surviving the signing of this agreement shall be those obligations still existing under the Covenant Not to Compete signed by Colucci, the Commercial Promissory Note, Limited Guarantees signed by E[dward] Bonanni and J[ohn] Bonanni, and the Second Trust Deed signed by Kar Kare in favor of Colucci, as well as the terms and conditions set forth in this Settlement Agreement." As Colucci notes, no mention is made of the 1999 Letter Agreement or any modifications.
On Colucci's motion to dissolve, the court admitted into evidence the Settlement Agreement. It held that the Settlement Agreement is unambiguous and by its terms did not alter the restrictions set forth in the Letter Agreement. The court further held that, even if the Settlement Agreement was ambiguous, any admissible parol evidence by the parties would nevertheless support the conclusion that the Letter Agreement was in effect.
Arguably, the Settlement Agreement is not "unambiguous," given that there were two agreements in effect at the time of the settlement but only one is mentioned. However, the trial court also based its findings on the credibility of the witnesses and their parol evidence. If the Settlement Agreement is ambiguous, parol evidence may be introduced to resolve the conflict. AT & T Wireless Servs. of Fla., Inc. v. WCI Cmtys, Inc., 30 Fla.L.Weekly D2130, 2005 WL 2140234 at *3, ___ So.2d ___, ___ (Fla. 4th DCA Sept. 7, 2005) (stating extrinsic evidence is admissible when an agreement is ambiguous and the parties suggest different interpretations); Developers of Northlake, Inc. v. Northlake Equities, Inc., 30 Fla.L.Weekly D2127, 2005 WL 2138770, ___ So.2d ___ (Fla. 4th DCA Sept. 7, 2005) (same).
Moreover, the Florida Supreme Court has cautioned restraint by reviewing courts when considering injunctions that rely on witness testimony. "To the extent [a trial court's decision] rests on factual matters, an order imposing a permanent injunction lies within the sound discretion of the trial court and will be affirmed *438 absent a showing of abuse of discretion. This is particularly true where the order relies on live testimony or other evidence that the trial court is singularly well-suited to evaluate." Operation Rescue, 626 So.2d at 670; accord Santiago v. State, 889 So.2d 200, 203-04 (Fla. 4th DCA 2004) (quoting Holden v. State, 877 So.2d 800, 801-02 (Fla. 5th DCA 2004) ("[T]he role of the trial court is to weigh the credibility of witnesses and to resolve evidentiary conflicts, and on truly discretionary matters, the appellate court must recognize the trial court's superior vantage point.")).
Here, there is evidence to support the trial court's findings. Colucci testified that he believed that he was bound by the seven year restriction contained in the Letter Agreement, which also contained the nationwide selling prohibition. Bonanni likewise testified that the Letter Agreement extended the length of time Colucci was prohibited from operating his business, as well as eliminated the carve-out. Bonanni testified that his purpose in paying $50,000, per the terms of the Letter Agreement, was to entice Colucci to retire. We will not disturb the trial court's determinations of witness credibility and, because there is parol evidence to support its decision, we will not overturn the trial court's interpretation of the Settlement Agreement.
Colucci further argues that Kar Kare failed to state the elements required to state a cause of action for a temporary injunction. A temporary injunction may be granted if the complainant shows "(1) that it will suffer irreparable harm unless the status quo is maintained; (2) that it has no adequate remedy at law; (3) that it has a substantial likelihood of success on the merits; and (4) that a temporary injunction will serve the public interest." Net First Nat'l Bank v. First Telebanc Corp., 834 So.2d 944, 949 (Fla. 4th DCA 2003). These elements must be supported by "[c]lear, definite, and unequivocally sufficient factual findings" before the court can enter a temporary injunction. Aerospace Welding, Inc. v. Southstream Exhaust & Welding, Inc., 824 So.2d 226, 227 (Fla. 4th DCA 2002).
Before determining whether Kar Kare has been irreparably harmed by Colucci's breach of the Covenant Not to Compete, we must determine whether Kar Kare had a legitimate business interest. Hapney v. Cent. Garage, Inc., 579 So.2d 127, 134 (Fla. 2d DCA 1991) (holding that proof of a legitimate business interest is "the threshold for a presumption of irreparable harm on breach of contract"). Florida Statutes section 542.335(1)(b) (2004) provides a nonexclusive list of "legitimate business interests":
1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3. Substantial relationships with specific prospective or existing customers, patients, or clients.
4. Customer, patient, or client goodwill associated with:
a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
b. a specific geographic location; or
c. specific marketing or trade area.
5. Extraordinary or specialized trading.
The statute further provides that restrictive covenants that are not supported by a legitimate business interest are void and unenforceable. Id.
In the instant case, the trial court found that the parties entered into a purchase and sale agreement whereby Kar Kare *439 paid $350,000 for Colucci's personal good-will and customer lists, and $25,000 for his confidential proprietary information. The court found that Kar Kare "proved the existence of one or more legitimate business interests justifying the restrictive covenants, including but not limited to valuable confidential business or professional information that does not qualify as trade secrets, and customer goodwill associated with an ongoing business practice by way of a trade name and associated with a specific geographic location in a specific trade area." By statute and by case law, these are protectable legitimate business interests. See Hapney, 579 So.2d at 131 (holding that three interests are recognized as legitimate business interests: "(1) trade secrets and confidential business lists, records, and information, (2) customer goodwill, and (3) to a limited degree, extraordinary or specialized training provided by the employer"); see also Fulford v. Drawdy Bros. Constr., II, Inc., 903 So.2d 1007, 1007 (Fla. 4th DCA 2005) (finding a legitimate business interest in customer lists); Am. Residential Servs., Inc. v. Event Technical Servs., Inc., 715 So.2d 1048, 1049 (Fla. 3d DCA 1998) (holding that, under Florida Statutes section 542.335(1)(b)2, "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets" is a legitimate business interest); Dyer v. Pioneer Concepts, Inc., 667 So.2d 961, 963-64 (Fla. 2d DCA 1996) ("An employer's legitimate protectable interests are trade secrets and confidential business lists, records, and information; customer goodwill; and, to a limited extent, extraordinary or specialized training which the employer has provided.").
Colucci contends that there was no testimony at the hearing to support the court's finding that Kar Kare had a legitimate business interest in confidential business information or customer goodwill in Florida. The trial court concluded that "Kar Kare [] proved the existence of one or more legitimate business interests ... including... customer goodwill associated with an ongoing business practice by way of a trade name and associated with a specific geographic location in a specific trade area." The court did not define "confidential business information," nor did it identify what information transferred from Colucci to Kar Kare qualified as such.
Protectable information includes that which is unique in the industry and confidential. Keel v. Quality Medical Systems, Inc., 515 So.2d 337 (Fla. 3d DCA 1987); see also Anich Industries, Inc. v. Raney, 751 So.2d 767 (Fla. 5th DCA 2000); cf. Autonation, Inc. v. O'Brien, 347 F.Supp.2d 1299, 1304 (S.D.Fla.2004) (information that is commonly known in the industry and not unique to the allegedly injured party is not confidential and is not entitled to protection").
There simply is no testimony in the record that would indicate what the trial court considered to be confidential business information. Bonanni testified that they retained Colucci to use his expertise in "spik[ing]" the company's sales in Florida. Furthermore, the Non-Competition Agreement states that Colucci is "widely known in the industry in which [Kar Kare] will operate." It is not clear, however, that mere expertise and reputation constitute confidential business information. The trial court also concluded that Kar Kare purchased "customer goodwill" from Colucci. Colucci, however, stated that, prior to selling his company, he "[n]ever had any customers [in Florida]." Furthermore, Bonanni admitted that no Florida customers were included on the customer list he purchased under the sale agreement. There simply is insufficient *440 information to conclude that Kar Kare demonstrated the existence of a protectable business interest.
Under Florida Statutes section 542.335(1)(j): "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." In Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985), the Florida Supreme Court held that when a covenant not to compete is breached, irreparable injury is presumed; however, the court did not address whether this presumption is rebuttable. This court, in fact, has held that such a presumption is, indeed, rebuttable and is not conclusive. See Passalacqua v. Naviant, Inc., 844 So.2d 792, 796 (Fla. 4th DCA 2003); First Miami Securities, Inc. v. Bell, 758 So.2d 1229, 1230 (Fla. 4th DCA 2000). In Don King Productions, Inc. v. Chavez, 717 So.2d 1094, 1094 (Fla. 4th DCA 1998), we stated that statutory language and legislative history demonstrate that a conclusive presumption was not intended.
There is little evidence on the record that Kar Kare did, in fact, suffer actual harm as a result of Colucci's breach of the Covenant Not to Compete. The trial court noted that Kar Kare could not name any customers who were lost to Colucci. Furthermore, the trial court noted that Kar Kare's claim of loss of business because of Colucci's operations is "somewhat speculative." Bonanni admitted that he could not attribute the decline in Kar Kare's sales between 2000 and 2004 to any particular factor, including Colucci's business. The only documented loss suffered by Kar Kare is the $50,000 it paid to Colucci to refrain from all competition for seven years under the terms of the Letter Agreement. However, we cannot uphold an agreement whose sole purpose is to prevent competition per se; such agreements are void as a matter of public policy. Hapney, 579 So.2d at 131; Lotenfoe v. Pahk, 747 So.2d 422, 424 (Fla. 2d DCA 1999).
Kar Kare suggests this court also assess the balance of harm between Colucci and Kar Kare. We have previously employed such a balancing test. See, e.g., Carnahan v. Alexander Proudfoot Co. World Headquarters, 581 So.2d 184 (Fla. 4th DCA 1991); Tomasello, Inc. v. de Los Santos, 394 So.2d 1069, 1072 (Fla. 4th DCA 1981). Given that Kar Kare has demonstrated neither a legitimate business interest nor actual harm, we cannot find that the balance of harm is tipped in its favor.
To prevail on an action for temporary injunctive relief, a party must demonstrate a substantial likelihood of prevailing on the merits. Lee v. Pinsky, 895 So.2d 1187, 1189 (Fla. 4th DCA 2005). Although Colucci contends that this court has never defined "substantial likelihood of success on the merits," we have held that if the legal rights of the parties are in dispute, a temporary injunction should not be issued. Storer Commc'ns, Inc. v. State, Dep't of Legal Affairs, 591 So.2d 238, 240 (Fla. 4th DCA 1991).
We must review a trial court's factual findings under an abuse of discretion standard. Operation Rescue, 626 So.2d at 670. Evidence adduced at an evidentiary hearing on a motion to dissolve a temporary injunction is reviewed in the light most favorable to the party who prevailed at that hearing. Daiwa Prods., Inc. v. NationsBank, N.A., 885 So.2d 884, 886-87 (Fla. 4th DCA 2004).
As stated above, Colucci rebutted Kar Kare's claim of irreparable harm, one of the necessary elements of a cause of action for a temporary injunction. Although there was evidence that Colucci breached *441 the agreement by using a similar name, Colucci successfully rebutted Kar Kare's claim of irreparable harm. Kar Kare did not demonstrate that it gained any customers from Colucci, nor was it able to show that its decline in sales was attributable to Colucci's business in Florida. Given the lack of evidence, we cannot find that Kar Kare is substantially likely to prevail on the merits.
We thus reverse the trial court's order granting Kar Kare's temporary injunction.
Reversed.
GUNTHER, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I join in the reversal but only on the following analysis.
The standard of review as to an injunction in a case involving agreements that, unless specifically permitted by statute,[2] would be deemed a restraint of trade and therefore unenforceable is not simply the well worn abuse of discretion standard here invoked by the majority and applied by this court in many prior decisions. Whether such an injunction is legally permissible must necessarily be an issue bound by rule, not discretion, rather than the other way around.
Section 542.33 permits an owner selling his business to be bound by an agreement precluding his competition, but the propriety of such a restraint on competition is dependent on specified statutory conditions and limitations.[3] The statute specifies that any such restraint must be reasonable as to duration and area; that any restraint is limited to areas in which the buyer of the shares or goodwill continues to operate; and that in every case any injunction requires a showing of an irreparable injury from such competition.
And so the propriety of this injunction turns on an ordinary legal inquiry into claimed rights under a statute, the kind of inquiry we usually call de novo. Here, the proponent of the injunction has failed to satisfy those statutory requirements. Without a clear demonstration of compliance with the statute, Kar Kare failed to invoke any discretion in the trial judge to grant an injunction. Put another way, it simply failed to make out a prima facie case to enforce this noncompetition covenant.
Even if Kar Kare had made a prima facie showing of statutory compliance, there was still another legal inquiry it was required to satisfy before any discretion would have been reposed in the trial judge to grant an injunction. All covenants not to compete arise under contracts. In addition to the inquiry under the antitrust law, the entitlement to such relief entails a legal construction of the contract itself, another rule bound inquiry. In this instance the common law of contracts contains a rule against the relief claimed by Kar Kare. The rule is that a prior material breach by the party seeking enforcement entitles the opposing party to terminate his own performance and treat the contract as breached. In Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181, 182 (Fla.1982), the supreme court adopted the Restatement position, saying "the nonbreaching party is relieved of its duty to tender performance and has an immediate cause of action *442 against the breaching party." See also RESTATEMENT (SECOND) OF CONTRACTS § 253 (1979); Poinsettia Dairy Prods., Inc. v. Wessel Co., 123 Fla. 120, 166 So. 306 (1936) (same).
The evidence is clear that Kar Kare, as the buyer of the business, was in breach of its promise of payment under the promissory note when it sought to enforce the covenant. The court treats this breach of payment as discretionary, as something that the trial judge may consider permissively to grant an injunction but is not required to account for. With all due respect, the court's approach is a departure from long established principles of contract law. If it is true that Kar Kare breached the duty of payment, this contract rule allows the seller to terminate his performance under the covenant. That is not something that the trial court may consider but is instead a plea in bar against Kar Kare's claim to enforcement. Pleas in bar are not something a judge may consider as a matter of discretion. If a plea in bar is proved by competent evidence, then the legal rule is that something is barred or prevented from happening. Something like this injunction, for instance.
There was no issue of discretion here. The evidence showed that Kar Kare had itself previously breached its parallel contractual duty of payment. Payment of the purchase price for the business was the only consideration for the covenant not to compete, so the judge was required under contract law to uphold the seller's termination of performance under the covenant not to compete. Enforcement of this right to terminate performance is necessary when the buyer breaches the duty of payment for the business affected. If the covenant of non-competition is enforceable even though the buyer has defaulted in payment, the sale agreement would become one-sided. The restrictive covenant would lose its only consideration.
Finally, the majority seems to indicate that when a trial judge engages in fact finding to resolve disputed facts the judge is engaged in an act of true judicial discretion. I disagree. Fact finding is not an exercise in discretion in the true sense. While the judge is free to find one side more credible than the other, that decision will be tested on appeal by the substantial competent evidence test, not by abuse of discretion.
I concur in the reversal on the basis of the foregoing analysis.
NOTES
[1] In the hearing on Colucci's motion to dismiss, the court held that the date "July 31, 1999," listed on the settlement agreement as the date of the Non-Competition Agreement, was the result of a scrivener's error.
[2] See § 542.18, Fla. Stat. (2005) ("Every contract, combination, or conspiracy in restrain of trade or commerce in this state is unlawful.").
[3] See § 542.33, Fla. Stat. (2005).