WARNER, J.
The husband appeals a final judgment of dissolution, claiming the trial court made eight errors in connection with awards of permanent alimony, bridge-the-gap alimony, equitable distribution of the marital home to the wife without considering the tax ramifications, and other awards. We conclude that the trial court abused its discretion in awarding three years of bridge-the-gap alimony and in awarding a $500 equalizing payment to the wife. We also conclude that the trial court abused its discretion in imputing only $25,000 in annual income to the wife, as that amount was inconsistent with the court’s other *860 findings. The trial court did not abuse its discretion in any of the remaining awards.
The parties were married for 14 years at the institution of the dissolution proceedings. They have two children. The husband works for Volvo Finance and makes a considerable salary plus bonuses. The wife was a legal secretary but did not work for most of the marriage. However, as the marriage was failing, the wife obtained training to be a massage therapist. She worked sporadically as a massage therapist but testimony at trial showed that she could make $25,000 per year within six months. Other testimony showed that she could eventually make $40,000 per year.
In its final judgment, the trial court found that the marriage is a “gray area marriage of over 15 years and does not carry a presumption of permanent periodic alimony.” The trial court considered that “the parties have enjoyed a comfortable lifestyle ... a fine home, meals outside of the home and other luxuries.” The court found that the wife was underemployed and thus imputed $25,000 in income to the wife based upon what she could presently earn as a massage therapist but concluded from other testimony that the wife had a need of $6,100 per month in alimony which would decrease as she transitioned to full-time employment.
The court found that the husband “has a gross monthly income of $22,410 per month without receipt of any bonuses ...,” a point of contention in this appeal. The trial court found that the husband’s testimony that his income may decrease because his employer was doing poorly “was not supported by credible evidence.” The court, considering each of the factors set forth under section 61.08, Florida Statutes, awarded the .wife $3,100 per month in permanent alimony and $3,000 per month in bridge-the-gap alimony for three years while she transitions to full-time employment for which the court found her to be capable of earning $40,000 per year.
In the final judgment, the husband was ordered to pay the wife, who was determined to be the residential parent, child support in the amount of $1,740 per month, which would be recalculated upon the exhaustion of the wife’s bridge-the-gap alimony.
With respect to equitable distribution, the trial court found that it was in the best interest of the parties for the wife and minor children to remain in the marital home, rejecting the husband’s request that the marital home be sold. The trial court awarded the marital home to the wife, requiring her to pay the outstanding mortgage. The court awarded the majority of the retirement funds to the husband. The court also required that the husband pay off the property taxes due on the house, a debt listed as $4,096 in the final judgment. Further, the court required in the final judgment that the husband pay off the home equity line of credit on the home. By the court’s calculation, the husband was receiving a total of $410,130 of the marital estate, while the wife was receiving $409,630.[1] Accordingly, the trial court ordered that the husband make an equalization payment of $500 to the wife. The trial court denied each party’s claim for attorney’s fees, finding that the parties had the ability to satisfy their own fees and costs where the final judgment left the parties with equal assets and debts. The husband filed a motion for rehearing, which was denied, and he now appeals.
The husband first challenges the trial court’s statement in its final judgment that his income was $22,410 per month without bonuses and that the receipt of *861 bonuses in the future was speculative at best. The wife agrees that the evidence showed that the figure of $22,410 amounted to the husband’s monthly income including regular bonuses that he received. The wife argues that the trial court’s misstatement in the final judgment that the monthly income was “without receipt of any bonuses” was at most harmless error and most likely the court was referring to the amount from his employment without additional consulting income which the husband received on the side.
We agree with the wife that the court appears to have made a misstatement, but it amounts to harmless error. The court disbelieved the husband’s claim that his income would go down. Instead, it found that the husband received regular bonus income from his employment. A spouse’s “regular and continuous” bonuses should be included in calculating income. See Shrove v. Shrove, 724 So.2d 679, 682 (Fla. 4th DCA 1999); see also § 61.08(2)(g), Fla. Stat. (instructing that in determining alimony, the court should consider “[a]ll sources of income available to either party”); cf. Hollister v. Hollister, 965 So.2d 341, 346 (Fla. 2d DCA 2007) (holding that the trial court did not abuse its discretion in not including the husband’s bonus in determining his income because the husband’s testimony supported the conclusion that the bonus was not regular and continuing). The amount of bonus income that the wife’s accountant attributed to the husband, which made up part of the $22,410 monthly income, was consistent with the amount actually received by the husband for the past several years. Because the amount found by the trial court was the exact amount that the wife’s accountant testified was his income including bonuses, we conclude that the court simply made a misstatement that the amount did not include bonuses, when in fact it did.
The husband also challenges the award of permanent alimony and bridge-the-gap alimony to the wife. We affirm the permanent alimony award, but reverse the award of bridge-the-gap alimony. A trial court’s decision on whether to award permanent periodic alimony is subject to an abuse of discretion standard of review. Leonardis v. Leonardis, 30 So.3d 568, 569 (Fla. 4th DCA 2010). At nearly 15 years of marriage at the time of the filing of the petition for dissolution, this was a “gray area” marriage, where there is no presumption for or against permanent alimony. See, e.g., Wofford v. Wofford, 20 So.3d 470, 474 (Fla. 4th DCA 2009); see also Young v. Young, 677 So.2d 1301, 1305 (Fla. 5th DCA 1996) (holding that a 15-year marriage fell within the gray area of marriages).
The purpose of permanent alimony “is to provide for the needs and necessities of life for a former spouse as they were established during the marriage of the parties.” Mallard v. Mallard, 771 So.2d 1138, 1140 (Fla.2000). “The criteria to be used in establishing this need include the parties’ earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties’ estates.” Canakaris v. Canakaris, 382 So.2d 1197, 1201-02 (Fla.1980). In making an alimony determination, the trial court is required to consider the statutory factors set forth in section 61.08(2), Florida Statutes. Nichols v. Nichols, 907 So.2d 620, 622 (Fla. 4th DCA 2005).
The court discussed each of these factors in this case. There was clearly competent substantial evidence to support the wife’s need for permanent alimony, particularly given the parties’ standard of living, which the wife could not attain with her *862 own income earning ability, and the dramatic disparity in income between the husband’s income earning ability and the maximum amount that the wife can be expected to make, as found by the trial court. These factors distinguish this case from those cited by the husband, in which the appellate courts held that the trial court abused its discretion in awarding permanent alimony in grey area marriage cases. See, e.g., Rojas v. Rojas, 656 So.2d 563, 564-65 (Fla. 3d DCA 1995) (the fact that the husband’s income was more than that of the wife did not solely justify the award of permanent alimony where the husband worked in sales, and the wife was a 35-year-old receptionist in good health with job skills that might eventually enable her to become self-supporting); Hann v. Hann, 629 So.2d 918, 920 (Fla. 2d DCA 1993) (holding that, in a grey area marriage, where the wife was relatively young and reasonably expected to secure employment in the field of teaching, the fact that the husband’s income was more than the income of the wife did not justify an award of permanent alimony to the wife). It can be gleaned from those cases that the income disparity was significantly less than in this case, and the standard of living more modest.
The husband also challenges the award of bridge-the-gap alimony for three years. Bridge-the-gap alimony is designed to ease the transition of a spouse from married to single life. Hay v. Hay, 944 So.2d 1043, 1048 (Fla. 4th DCA 2006). Where no rehabilitative plan is presented, a bridge-the-gap award must have a relatively brief durational limit. See Bryan v. Bryan, 765 So.2d 829, 831 (Fla. 1st DCA 2000) (holding five-year bridge-the-gap award to be an abuse of discretion). A bridge-the-gap alimony award is thus proper where the receiving spouse has adequate employment skills and needs nothing to be “rehabilitated” to, other than to ease the transition from a married to a single status. Iribar v. Iribar, 510 So.2d 1023, 1024 (Fla. 3d DCA 1987).
Here, the -wife had the skills to be a massage therapist and expected she could make $25,000 per year. Based upon other testimony in the case, the court determined that she could make $40,000 per year and that there were presently jobs available paying that amount of money, relying on the testimony of the director of the massage therapy school that the wife attended. Because there was evidence that the wife could make that amount of income right away and the court did not find that there was any reason why the wife could not work full time, the court abused its discretion in awarding the wife bridge-the-gap alimony for three years. There was no “gap” to bridge between her married life with minimal employment and her single life in full employment.
Because the trial court found that the wife was capable of earning $40,000 and that jobs were available paying an income of that amount, the court also abused its discretion in imputing the lower figure of $25,000 to the wife for purposes of the child support calculations. Section 61.30, Florida Statutes, requires the court to impute income to an under-employed or unemployed parent when the court finds that the unemployment is voluntary and that it is not necessary that the parent stay home with the children. Likewise, our cases make clear that imputation of income is appropriate where a party is willfully earning less and the party has the capability to earn more by the use of his or her best efforts. See, e.g., Konsoulas v. Konsoulas, 904 So.2d 440, 444 (Fla. 4th DCA 2005).
In this case the court found that the wife simply prefers not to work full time and did not find that it was necessary that the *863 wife stay home with the children. In fact, the court expected the wife to work full time. In that case, the statute provides that the court will determine the proper level of income to be imputed based upon “the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community.” § 61.30(2)(b), Fla. Stat. The court accepted the evidence that the wife could make $40,000 as a massage therapist, and also that jobs were available in the community. Based upon those findings, it was error for the court to impute a lesser amount of income to the wife. On remand, the court should recalculate the child support allowing both for the changes in the wife’s and husband’s incomes based upon our reversal of the bridge the gap alimony as well as the increased amount of income to the wife.
As to the equitable distribution awards by the trial court, the husband claims that in order to comply with the equitable distribution fashioned by the trial court, in which the court awarded the marital home to the wife and the majority of the retirement accounts to him, he will have no choice but to invade the retirement funds in order to obtain housing, satisfy the liabilities, pay the professional fees of his lawyer and accountant, and meet his alimony and child support obligations. The husband maintains that the trial court failed to consider any tax penalty for early withdrawal and thus the distribution scheme results in an inequitable distribution.
We agree with the wife, however, that the trial court did not need to consider the tax consequences regarding the retirement accounts because the trial court was not requiring the husband to liquidate or otherwise convert the retirement assets to cash. Indeed, the wife’s forensic accountant testified that the husband could obtain loans against his retirement accounts, just as the wife would most likely have to refinance the marital home and take some of the equity in order to satisfy her obligations. Thus, the wife’s evidence showed that the husband would not necessarily incur any tax penalties; the wife would have to make the same decisions to withdraw equity and pay back on an increased mortgage; and the court could have considered the husband’s income sufficient to pay his liabilities without liquidating any of his accounts. The trial court did not abuse its discretion in its rulings.
However, we do conclude that the court erred in ordering the husband to pay a $500 equalizing payment to the wife. In the final judgment, the trial court required the husband to pay a $500 equalization payment, reasoning as follows:
The Husband is receiving a total of $410,130 of the marital estate and the Wife is receiving $409,630.00. The husband shall make an equalization payment to the wife of $500.00 within 30 days of this order.
However, the trial court was mistakenly using the “total assets” figures in making this determination. The chart attached to the final judgment shows that the parties would be receiving “net assets” of $406,035 each. In other words, after liabilities were assigned, the parties were receiving an equal share of the marital estate. The trial court thus erred in requiring the husband to pay a $500 equalization payment.
In all other respects we affirm the final judgment, specifically rejecting the husband’s claim that the cumulative effect of all the awards constituted an abuse of discretion.

*864
Affirmed in part; reversed in part, and remanded for proceedings in accordance with this opinion.

GROSS, C.J., and FISHMAN, JANE D., Associate Judge, concur.

. As further discussed below, these figures are incorrect.