EDWARDS, J.
Winter Green at Winter Park Homeowners Association, Inc. ("the Association"), appeals the lower court's nonfinal order dissolving a temporary injunction regarding the election of the Association's board of directors ("Board") that took place during a questionably noticed annual meeting. Appellees are a former Board member and the property manager. We affirm the trial court's dissolution of the *1145 temporary injunction, but reverse that portion of the appealed order that required the parties to complete binding arbitration before any further litigation of the contested issues.
What should have been a rather routine meeting of the Association was cloaked with mystery, intrigue, and confusion. Two nearly identical notices were sent out to announce the upcoming annual meeting, each of which stated that the only agenda item was the election of the Board for the year 2018, and each of which included candidate applications for those who sought to be elected to the Board. The only difference between the two notices was that the one prepared by the Association's property manager set the meeting date for November 15, 2017, while the one received by many of the homeowners announced the date as November 12, 2017; thus, the only difference was the "5" or "2" in the date. The property manager also claimed to have mailed a notice on November 10, 2017, cancelling the November 15, 2017 meeting; however, none of the homeowners received that cancellation notice until a day or two after the November 12, 2017 meeting had taken place.
Fifty-five members of the Association, apparently a quorum, attended the November 12, 2017 meeting; however, several noted their surprise that neither the property manager nor any of the 2017 Board members were present for the annual meeting.[1] One homeowner even went to the property manager's office during the meeting, but found nobody there. Five homeowners who had submitted candidate applications were elected as the 2018 Board during the November 12 meeting. Shortly afterward, the 2018 Board made a written request directed to the 2017 Board and the property manager to turn over the Association's papers, check book, and other banking records to the 2018 Board.
The Association through its 2018 Board sued Appellees as they had failed to turn over the requested documents. The 2018 Board obtained a temporary injunction without notice based on the allegation of exposure to irreparable harm to the Association and to the homeowners because the normal functions of the Association could not be carried out without the documents, placing property values at risk. The trial court then scheduled an evidentiary hearing, sua sponte, to determine whether the temporary injunction should remain in place.
Several homeowners testified at the hearing that they received the November 12 notice, but did not receive the November 15 notice. Thus, they purportedly had attended the November 12 meeting unaware that the property manager had attempted to schedule and then cancel a meeting on November 15. At least one homeowner testified that the November 12 meeting notice package he received had several empty staple holes in the papers consistent with somebody taking apart, reassembling, and re-stapling a stack of papers.
The property manager testified that she personally prepared and mailed the notice packages for the November 15 meeting to the homeowners. Several were returned to her by the post office as undeliverable. Some had previously been opened, but others were still sealed until they were offered into evidence for the trial court's consideration. Those mailed, but undelivered, notices indeed advised of a November 15 meeting date, and did not have empty staple holes like the November 12 notices.
*1146 The property manager testified that she scheduled the meeting for November 15 and mailed her notice packages in order to comply with the Association's bylaws that require fourteen days advanced notice of the annual meeting. The property manager stated that whoever prepared and distributed the November 12 notices had not complied with the fourteen-day advance notice requirement, making the November 12 meeting improperly noticed. According to the evidence presented, neither the property manager nor any member of the 2017 Board had received one of the November 12 notices and were thus unaware of that meeting until after it took place.
The trial court concluded that the circumstances surrounding the notices were suspicious, which suggested that there had been some "shenanigans" involved. Based on a conclusion that the 2018 Board may not have been properly elected, the trial court dissolved the temporary injunction. Instead of scheduling the matter for trial so that the issues could be litigated and resolved, the trial court ordered the parties to participate in binding arbitration before any further litigation.
On appeal, the Association focuses first on whether the trial court had the authority to dissolve the temporary injunction. We review that order to determine whether the trial court abused its discretion. See Bay N Gulf, Inc. v. Anchor Seafood, Inc. , 971 So.2d 842, 843 (Fla. 3d DCA 2007). A "temporary injunction issued without notice is an extraordinary remedy, which should be granted sparingly and only after compliance with [Florida Rule of Civil Procedure] 1.610." Jones v. Jones , 761 So.2d 478, 480 (Fla. 5th DCA 2000). "A party against whom a temporary injunction has been granted may move to dissolve or modify it at any time." Fla. R. Civ. P. 1.610(d).
Here, the Association argues that, because Appellees did not file a motion to dissolve the injunction, the trial court had no authority to do so. However, as Appellees point out, the trial court has the inherent authority to reconsider "any of its interlocutory rulings prior to the entry of a final judgment or final order in the cause," see Bettez v. City of Miami , 510 So.2d 1242, 1243 (Fla. 3d DCA 1987), and the trial court expressly said that it set the return hearing "to determine whether the temporary injunction should continue." Based on the evidence presented to the trial court, it concluded that the Association and the 2018 Board were unlikely to prevail on the merits. See Colucci v. Kar Kare Automotive Grp., Inc. , 918 So.2d 431, 440 (Fla. 4th DCA 2006) ("To prevail on an action for temporary injunctive relief, a party must demonstrate a substantial likelihood of prevailing on the merits."). Thus, the trial court did not abuse its discretion in dissolving the temporary injunction.
The Association next argues that the court lacked jurisdiction to order the parties to binding arbitration because Appellees failed to file an election dispute within the statutory time limit of sixty days. We review a court's nonfinal order determining entitlement to arbitration de novo. Extendicare Health Servs. v. Estate of Patterson , 898 So.2d 989, 990 n.1 (Fla. 5th DCA 2005).
"Any election dispute between a member and an association must be submitted to mandatory binding arbitration with" the Division of Florida Condominiums, Timeshares, and Mobile Homes in the Department of Business and Professional Regulation ("the Division"). § 720.306(9)(c), Fla. Stat. (2018). "Any challenge to the election process must be commenced within 60 days after the election results are announced."
*1147 § 718.112(2)(d)4.c., Fla. Stat. (2018). It is undisputed by the parties that Appellees did not file an election dispute with the Division within the time allotted. Once the sixty-day period passed, the Division lost jurisdiction to hear and resolve the election dispute. See Colombo et. al v. Deer Run Prop. Owners Ass'n , No. 14-03-7312, 2014 WL 6437446, at *1 (Fla. DBPR Arb. Oct. 14, 2014) ("Petitioners have not filed a timely election dispute petition with the Division, depriving the arbitrator of jurisdiction to hear and resolve this dispute ...."); see also Alexander et. al v. Hamlet Resident's Ass'n , No. 17-01-3536, 2017 WL 2445803, at *2 (Fla. DBPR Arb. Apr. 6, 2017) ("Therefore, the election dispute alleged in the petition is time-barred under the statute."); Dombkowski et. al v. Black Diamond Homeowner's Ass'n , No. 17-04-6919, 2017 WL 7038337, at *2 (Fla. DBPR Arb. Dec. 5, 2017) (holding petitioner missed deadline for challenging election dispute). Thus, since the sixty-day window had passed and the Division no longer had jurisdiction over the dispute, the lower court erred in ordering the parties to participate in binding arbitration if the intent was to have the Division conduct the arbitration.
Additionally, the trial court erred in ordering the parties to participate in any other form of binding arbitration. In the absence of a contract or other agreement between the parties calling for arbitration, Florida's trial courts have the authority to order parties to participate only in nonbinding arbitration, although the parties can voluntarily stipulate to binding arbitration. See § 44.103(2), Fla. Stat. (2017) ("A court, pursuant to rules adopted by the Supreme Court, may refer any contested civil action filed in a circuit or county court to nonbinding arbitration."); § 44.104(1), Fla. Stat. (2017) ("Two or more opposing parties who are involved in a civil dispute may agree in writing to submit the controversy to voluntary binding arbitration ...."). Here, the trial court's order required binding arbitration as opposed to nonbinding, and, by the very nature of the appeal, it is quite clear that the parties did not stipulate to binding arbitration. As a "party may not be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate," Toca v. Olivares , 882 So.2d 465, 466 (Fla. 3d DCA 2004), the lower court erred by ordering the parties to attend binding arbitration. Thus, we reverse that portion of the order requiring the parties to participate in binding arbitration before litigation could resume, and remand this cause for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART.
ORFINGER and HARRIS, JJ., concur.

Certain members voted the proxies provided by homeowners who did not attend the November 12, 2017 meeting; thus, the exact number present at the meeting is unclear.