SILBERMAN, Chief Judge.
David Marvin Tradler (the Husband) appeals an amended final judgment of dissolution of marriage and alleges error in the equitable distribution and alimony awards to Linda Berry Tradler (the Wife). We affirm the award of nominal alimony to the Wife without discussion. We reverse the equitable distribution portion of the amended judgment and remand for the court to fashion a new equitable distribution based on the errors discussed below.
I. BACKGROUND
The parties had a seventeen-year marriage when the Wife filed a petition for dissolution of marriage on June 1, 2009. They were married on May 16, 1992, and had one daughter in 1995. The Wife worked primarily part-time during the marriage as a dental hygienist. The Husband began his career as a mechanical engineer with the Campbell Soup Company and worked for Campbell for over nineteen years in Ohio and New Jersey until he was laid off in 2006. When he left Campbell his base salary was $103,000 per year. One of the assets at issue is the Husband’s Campbell pension. He also was enrolled in a Campbell Soup Company Savings Plus Plan that he rolled over into a Fidelity IRA (the Fidelity Rollover IRA).
In October 2007 the Husband became employed at PepsiCo/Tropicana in Braden-ton, Florida, as a project engineer. He was laid off in April of 2009, when his salary was $82,300. The Husband actively sought employment but was involuntarily unemployed at the time of the final hearing which was held on July 23, 2010, and August 18, 2010.[1]
The parties stipulated to a parenting plan for their daughter and litigated financial issues at the final hearing. Apart from the pension and Fidelity Rollover IRA, assets at issue include eight certificates of deposit (CDs) the parties owned at Wachovia Bank, funds the parties maintained in a Tropicana Credit Union joint account, and proceeds from checks the *738 Husband’s mother gave to the Husband. Both parties employed forensic accountants to assist the trial court with the evaluation of the parties’ finances. CPA Bob Wenzel testified for the Husband, and CPA Elizabeth Carlson testified for the Wife.
The trial court entered a final judgment and sua sponte entered an amended final judgment on November 22, 2010. The court’s intent was to equitably distribute the parties’ marital assets equally. The trial court found the value of the marital estate to be $1,041,825 plus an additional $73,131 it found to represent the increase in value during the proceedings of the pension and retirement funds.[2] Based on the trial court’s distribution of assets, the court ordered the Husband to pay an equalizer payment of $152,042 to the Wife within six months, plus unpaid property taxes on the marital home totaling $8909. After the trial court denied the Husband’s motion for rehearing, the Husband timely filed his notice of appeal. He raises five issues regarding the equitable distribution.
We initially note that part of the confusion in the equitable distribution stems from the trial court’s stating that it identified the marital and nonmarital assets as set forth on an attached Exhibit A. The original judgment attached two of the three pages of the Wife’s Exhibit 17, an asset summary, and the amended judgment failed to attach the exhibit at all. Furthermore, the values for assets on the exhibit are different than some of the trial court’s findings. The result is that the exhibit shows the Husband making an equalizer payment of $88,253 to the Wife, but the court ordered the Husband to make an equalizer payment of $152,042 to the Wife. It would have been very helpful to our appellate review if the trial court had included an equitable distribution chart that reflected the values used in the amended judgment.
II. EQUITABLE DISTRIBUTION
A. Identification and Valuation of Campbell Pension
The Husband contends that the trial court failed to identify and value the nonmarital portion of the Campbell pension and distribute it to the Husband. We review de novo the characterization of an asset as marital or nonmarital. See Fortune v. Fortune, 61 So.3d 441, 445 (Fla. 2d DCA 2011). Competent, substantial evidence must support the trial court’s valuation of the asset. Furbee v. Barrow, 45 So.3d 22, 24-25 (Fla. 2d DCA 2010).
The trial court must set apart to each spouse his or her nonmarital assets. § 61.075(1), Fla. Stat. (2008). The parties agree that the Campbell pension contained a nonmarital component because the Husband was enrolled in the pension prior to the marriage. The parties also agree that the Husband was entitled to his premarital contributions and the passive accumulations on those contributions. See § 61.075(6)(b)(1), (3); Blase v. Blase, 704 So.2d 741, 742 (Fla. 4th DCA 1998). The parties’ experts testified to different valuations for the nonmarital component.
In the amended judgment, the trial court found the Campbell pension had a value of $160,532 as of June 30, 2009, which is the market value listed on the Wife’s Exhibit 17. The court found the pension increased in value to $186,465 as of May 31, 2010, and that increased value is the subject of section II.D. below. The *739 Wife’s expert, CPA Carlson, testified that she used a proportionate share method of calculating the nonmarital portion, with 217 months being marital and 50 months being nonmarital. She testified that the value of the Campbell pension was $197,000 and that the marital portion was $160,532.[3] Thus, according to the Wife’s expert, the Husband’s nonmarital portion was the balance of $36,468, although the court did not expressly state that in the amended judgment. Instead, the trial court identified only the amount of $160,532 which represented the marital portion. Although the amended judgment was not very clear on this issue, it appears that the trial court distributed only the marital portion without specifying the Husband’s nonmarital portion. Because we reverse on other issues discussed below, we direct the trial court to clarify on remand and explicitly state the marital and nonmarital portions of the Campbell pension.
B. Tax and Penalty Consequences of Retirement and Pension Plans
The Husband contends that the trial court improperly failed to consider the tax and penalty consequences that accompany the parties’ retirement and pension plans, producing an inequitable result. In its amended judgment the trial court explained that it would not consider tax consequences because “[t]he Husband testified that he had no intention to withdraw or cash in any of the pension and retirement funds.” The Husband testified that he did not need to cash in his pension and retirement funds “at this moment” and that he had about $100,000 in liquid assets. He stated that no one was forcing him to cash in his pension or Fidelity Rollover IRA “yet.”
The amended judgment requires the Husband to make an equalizer payment of $152,042 and to pay the marital home’s property taxes of $8909, for a total of $160,951 payable to the Wife within six months. At the time of the final hearing, the Husband was unemployed. Thus, it seems that the amended judgment would force the Husband to invade the pension and retirement accounts to comply with the amended judgment, thus incurring taxes and penalties. Furthermore, the Husband presented evidence to the court on the tax and penalty consequences accompanying the pension and retirement accounts, and the Wife presented evidence on the tax consequences associated with those accounts.
A trial court should consider the tax consequences when valuing marital assets if a party presents expert evidence on the tax consequences. See Austin v. Austin, 12 So.3d 314, 316 (Fla. 2d DCA 2009); Kadanec v. Kadanec, 765 So.2d 884, 886 (Fla. 2d DCA 2000). “When evidence of a tax impact is presented, it is error for the trial court to fail to consider these consequences.” Diaz v. Diaz, 970 So.2d 429, 432 (Fla. 4th DCA 2007). Otherwise, if the trial court awards assets to one party that have associated tax liabilities but awards assets that have no tax consequences to the other party, the result is inequitable.
The Wife contends that the trial court does not have to consider tax consequences on retirement accounts when it does not require a party to liquidate or otherwise convert the retirement assets to cash, citing Hornyak v. Hornyak, 48 So.3d 858 (Fla. 4th DCA 2010). In Homyak, the husband contended that as a result of the court’s equitable distribution he would have no choice but to invade his retirement *740 funds and that the trial court failed to consider any tax penalty for early withdrawal, thus producing an inequitable distribution. Id. at 863. However, the Fourth District determined that the trial court did not abuse its discretion because the wife presented expert testimony that the husband could obtain loans against his retirement accounts and avoid incurring any tax penalties. Id.
The present case is distinguishable from Hornyak. Both experts here recognized that the pension and retirement accounts would incur income tax liability. In addition, the Husband presented evidence through his CPA regarding tax penalties for early withdrawal of retirement funds. The parties presented conflicting evidence on the tax consequences. The Wife’s expert used an 18.5% marginal tax rate and deducted the taxes from the marital portion of the assets on the Wife’s Exhibit 17. The Wife’s expert explained that on the parties’ tax returns for 2007 and 2008 the highest marginal rate they paid was 18.5%. The Husband’s expert used a higher marginal tax rate of 33% and also accounted for a 10% early withdrawal penalty. The Husband’s expert also calculated an alternative structured payout over three years to lessen the tax burden. The Wife contends that the Husband had about $547,885 in assets at his disposal and would not need to convert retirement assets to cash to make the equalizer payment, but our review of the record indicates that amount includes his pension and retirement accounts. In addition, even if the Husband does not need to access the retirement assets immediately, it is evident the assets will be taxed when the Husband withdraws funds from those accounts.
Based on the fact that the parties presented evidence on tax and penalty consequences associated with the pension and retirement accounts, we reverse and remand for the trial court to consider those consequences in making its equitable distribution.
C. Assets in Equitable Distribution That Did Not Exist as of Trial
The Husband argues that the trial court erred in including liquid marital assets in the equitable distribution that had been dissipated for living expenses, attorney’s fees, and marital debt repayment between the valuation date of June 1, 2009, and the date of trial (conducted on July 23, 2010, and August 18, 2010). He also contends that the trial court’s finding that the Husband dissipated $93,000 in CDs from the marital Wachovia accounts is not supported by competent, substantial evidence or a finding that it resulted from intentional misconduct.
Generally, “it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings.” Roth v. Roth, 973 So.2d 580, 584 (Fla. 2d DCA 2008). The evidence must support and the trial court must make a specific finding that a party engaged in intentional misconduct that resulted in the dissipation of a marital asset during the dissolution proceedings before the trial court can include that asset in the equitable distribution scheme. Id. at 585; see also Austin, 12 So.3d at 317 (stating that “the trial court cannot award assets that were depleted during the dissolution proceedings that were expended for support and marital expenses if the parties engaged in no misconduct”). The misconduct necessary to justify inclusion of a dissipated asset in the equitable distribution requires something more than “simple squandering of marital assets.” Roth, 973 So.2d at 585. Rather, the evidence must show “the spending spouse’s intentional dissipation or destruction of the asset.” Id. Without evidence *741 and a specific finding of misconduct, the trial court abuses its discretion in including a dissipated asset in the equitable distribution scheme. See Tummings v. Francois, 82 So.3d 955, 959 (Fla. 2d DCA 2011).
The trial court found that the Husband “dissipated marital funds” by cashing in $93,000 in CDs from marital Wachovia accounts. The court awarded one-half of those funds to the Wife. The trial court also found that the parties had a joint Tropicana Credit Union account with $170,000 and that the Wife removed one-half, or $85,000, from the account. The trial court found that after the Wife removed her half from the Tropicana account, the Husband “returned a check to his mother in the amount of $85,000. There was no substantial competent evidence that the money was a loan or gift from the mother.”
Further, the trial court found that the Wife spent approximately $23,000 from June 2009 through July 2010 on living expenses. The Wife also testified that she paid approximately $25,000 in attorney’s fees and $5,800 for the expert witness. Of the $85,000 she took out of the Tropicana account, she had about $40,000-$45,000 left at the time of trial. With respect to the Husband’s expenses, the trial court stated, “Husband contends he spent approximately $30,806.96 although the Husband did not pay the mortgage on the marital home for May, June[,] July or August 2010, and included his moving expenses, the Court considers the household expenses as equal.”
Based on the fact that Exhibit A (Wife’s Exhibit 17) that the trial court intended to attach to the amended judgment does not match up with the written findings, it is difficult to be certain what assets the trial court awarded or intended to award to each party. And it appears that the trial court awarded dissipated assets used for living expenses during the dissolution proceedings without any finding of intentional misconduct.
It also appears that the trial court included $85,000 in the distribution that consists of funds the Husband had returned to his mother after the Wife had removed the other $85,000 from the Tropicana account. While the court found, as to the $85,000 returned to the Husband’s mother, that “[t]here was no substantial competent evidence that the money was a loan or gift from the mother,” the court did not make a finding of specific misconduct. The Husband testified that his mother lent him the money because he lost his job and that he was paying back the loan. However, the Husband deposited the check from his mother into the joint credit union account on May 11, 2009, and wrote a check back to her on June 10, 2009, while he was still unemployed. On the memo line of the check he wrote to his mother was the notation “unaccepted inheritance return.” That notation seems to support a conclusion that the $85,000 was meant as a gift during the mother’s lifetime as an advance on the Husband’s inheritance. He returned the money from the parties’ joint funds after he learned the Wife had filed for divorce.
Arguably, the trial court could have made a finding of misconduct based on this evidence, but it did not. In fact, the trial court found the evidence insufficient to establish a gift but seemed to treat the return of the money as misconduct. The trial court included the $85,000 in the equitable distribution, but it is clear that it was dissipated during the proceedings. Only with a finding of misconduct could the $85,000 properly be included in the distribution scheme. There was some conflicting evidence to support the theory of a loan and the theory of a gift, and the trial *742 court must weigh the evidence and make the determination on remand. If the money was a gift from the mother, the trial court must then determine whether the return of the money was misconduct. The trial court in its discretion may take additional evidence on remand to make these determinations.
With respect to the Wachovia CDs, the trial court found that the Husband dissipated $98,000 in marital funds by cashing in the CDs. The court then awarded one-half of those funds to the Wife. As the Wife points out, it is unclear where the trial court got the figure of $98,000. The Husband testified and his equitable distribution worksheet showed that as of June 1, 2009, the parties had eight Wachovia CDs. The total value of the eight CDs as of June 1, 2009, was approximately $120,000.
The trial court again made no finding of misconduct with respect to the CDs. The Wife contends that the Husband was trying to hide the CD money. The Husband testified that he deposited the CD funds into Countrywide Bank which then became Bank of America. The Wife argued at trial that the Husband did not list a third Bank of America account on his financial affidavit.[4] The Wife contends that the trial court did not abuse its discretion based on these facts.
However, the Husband’s equitable distribution worksheet lists the eight Wacho-via CDs as in existence on June 1, 2009, but also reflects that the accounts had been closed. The Husband testified that he closed the CDs on June 25, 2009. The worksheet lists three Bank of America accounts that were not in existence on June 1, 2009, and that had current values of $100; $34,306; and $66,884.93. This is consistent with the Husband’s testimony that he had about $100,000 in liquid assets. It appears that the Husband spent some of the proceeds from the CDs while he was unemployed between June 2009 and July 2010 and that the remaining balance is in the Bank of America accounts. Without a finding of misconduct, the trial court abused its discretion in apparently adding $93,000 to the equitable distribution scheme that represented CDs that were no longer in existence. If on remand the trial court concludes that misconduct occurred, the court must make findings as to the nature of the misconduct because on this record we cannot determine that misconduct occurred.
D. Present Value of Campbell Pension
The Husband contends that the trial court’s determination of a present value as of May 31, 2010, of $186,465 for the Campbell pension is not supported by competent, substantial evidence. We agree. Carlson testified to a present value of the Campbell pension of $197,000 with a marital portion of $160,532. The trial court found the value to be $160,532, consistent with Carlson’s testimony, but stated that the value increased from $160,532 on June 30, 2009, to $186,465 on May 31, 2010. We have found no record evidence to support the valuation of $186,465 as to the Campbell pension. It appears that the figure was first mentioned in the Wife’s proposed final judgment. We reverse the valuation of $186,465 for the Campbell pension and remand for a valuation supported by record evidence. Again, the trial court in its discretion may take additional evidence to determine the value.
*743 E. Cut-Off Date for Marital and Non-marital Property as to Gift Checks
The evidence established that during the marriage the Husband received six gift checks totaling $64,000 from his mother. The trial court found that all six gift checks had been commingled in the parties’ joint account and became marital funds. The court awarded $82,000 to the Wife as equitable distribution. The Husband contends that he never commingled gift checks #2 ($10,000), #3 ($10,000), and # 4 ($12,000) that he received from his mother and that these funds and the accrued interest on them are his nonmarital property.
The trial court must set apart to each spouse his or her nonmarital assets. § 61.075(1). Nonmarital assets include property received by either spouse by non-interspousal gift. § 61.075(6)(b)(2). In the absence of a settlement agreement, the cut-off date to determine which assets are marital is the date the petition for dissolution was filed. § 61.075(7); Fortune v. Fortune, 61 So.3d 441, 445 (Fla. 2d DCA 2011). This sets “a bright-line rule” for the classification of marital assets. Schmitz v. Schmitz, 950 So.2d 462, 463 (Fla. 4th DCA 2007). Although a trial court has discretion as to the valuation date of assets, the trial court does not have the same discretion with respect to determining which assets are marital. See Finney v. Finney, 995 So.2d 579, 580 (Fla. 1st DCA 2008).
With respect to check #2, the evidence does not support the trial court’s finding that the funds were commingled. Based on the Husband’s testimony and Husband’s Exhibit 8, the $10,000 check was deposited on January 12, 2005, into a Countrywide Bank CD in the Husband’s sole name and was transferred to a Bank of America account in the Husband’s sole name on January 14, 2010. The Husband kept this noninterspousal gift in his sole name and never commingled the funds in a joint account. Thus, with respect to gift check # 2, the trial court should have classified the $10,000 and interest earned on the funds as the Husband’s nonmarital asset. See § 61.075(6)(b)(3) (defining non-marital assets to include “[a]ll income derived from nonmarital assets during the marriage unless the income was treated, used, or relied upon by the parties as a marital asset”).
With respect to gift checks #3 and # 4, the Husband’s testimony and exhibits reflect that he deposited the funds into Countrywide Bank in CDs or other accounts in his sole name. Then, on June 5, 2009, four days after the Wife filed the petition for dissolution, the Husband transferred the proceeds to the parties’ joint Tropicana account. But based on the bright line of the filing date of June 1, 2009, the proceeds from gift checks # 3 and # 4 were noninterspousal gifts in the Husband’s sole name. Thus, applying the rule in section 61.075(7), the funds are nonmarital assets.
Accordingly, we reverse and remand for the trial court to classify gift checks # 2, # 3, and # 4 and the interest earned on them as nonmarital assets.
III. CONCLUSION
In summary, we reverse the equitable distribution portion of the amended final judgment and remand for the trial court to fashion a new equitable distribution. On remand the trial court will need to list marital and nonmarital assets and liabilities and value them based on competent, substantial evidence, including evidence of tax and penalty consequences. The court should only award dissipated assets if it finds misconduct. It will be helpful if the trial court provides an equitable distribu *744 tion worksheet that is consistent with the court’s findings. As discussed above, and due to the passage of time, the trial court in its discretion may take further evidence on remand.
Affirmed in part, reversed in part, and remanded.
ALTENBERND and NORTHCUTT, JJ., Concur.

. The Wife supplemented the appellate record with an amended financial affidavit from the Husband reflecting that he found new employment. We do not consider this amended affidavit that was not before the trial court when it made the equitable distribution and a nominal alimony award. We recognize that the Wife may seek modification of the alimony award based upon a substantial change of circumstances.

. The parties have three other retirement accounts: a Fidelity traditional IRA, a Fidelity Roth IRA, and a PepsiCo 401 (k) plan.

. We agree with the Wife's counsel on appeal that Carlson’s calculation appears inaccurate. When $197,000 is multiplied by 217/267 the product is $160,108.61 rather than $160,532.

. The Husband testified that this third account was a checking account with about $100 in it.