NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ROBERTA L. DRAVIS,                              )
                                                )
            Appellant,                          )
                                                )
v.                                              )       Case No.   2D13-5513
                                                )
DEAN AUGUST DRAVIS,                             )
                                                )
            Appellee.                           )
                                                )
_____ )

Opinion filed July 15, 2015.

Appeal from the Circuit Court for
Polk County; Keith Spoto, Judge.

Jean Marie Henne of Jean M. Henne,
P.A, Winter Haven, for Appellant.

Shelley Harrell Shelton of Hall, Bennett,
& Shelton, Winter Haven, for Appellee.


SALARIO, Judge.

            The former wife appeals a final judgment of dissolution of marriage.  She

asserts that the trial court erred by (1) finding that $78,000 of cash gifts that she

received from her mother were marital assets subject to equitable distribution; (2)

including in its equitable distribution computation the proceeds of a bank account that

were dissipated by the former wife after the parties' separation; (3) double-counting as

marital assets the proceeds of a closed bank account that, before the parties' separation, were moved to a new bank account, the proceeds of which were also determined to be marital assets; and (4) failing to award retroactive alimony. For the reasons set forth in this opinion, we find no error with those portions of the final judgment related to the cash gifts and retroactive alimony, but we must reverse the final judgment and remand for further proceedings on the equitable distribution of the parties' marital assets. In all other respects, including the alimony award, we affirm the final judgment.

### *The Cash Gifts*

The parties were married in January 1990. During the marriage, the former wife received cash gifts from her mother for birthdays and at Christmas. At the time the parties separated those gifts totaled $78,000. That sum was kept in a passbook savings account at CenterState Bank of Florida, together with other proceeds received during the marriage that no one disputes were marital assets. At the time the parties separated that account had a balance of $121,196.

The CenterState account was opened in 2009 and was titled jointly in the names of both the former husband and the former wife. In September 2010, the former wife, who handled all of the marital finances, caused the account to be retitled in her name alone, with the former husband listed solely as a party "payable on death." She did not inform the former husband of this change. Marital funds continued to be deposited into the account while it was titled in the former wife's name. In June 2011, a few months prior to the parties' separation, the former wife had the former husband removed from the account entirely without informing him. After the separation, the

former wife transferred $78,000 from the account to an account titled in her mother's name.

The trial court found that all of the proceeds of the CenterState account, including the proceeds representing gifts to the former wife from her mother, were marital assets subject to equitable distribution under section 61.075, Florida Statutes (2013). The former wife asserts that this was error because those gifts should have been characterized as nonmarital assets that are not subject to equitable distribution. We review a trial court's characterization of an asset as marital or nonmarital de novo and any factual findings necessary to make this legal conclusion for competent, substantial evidence. Tradler v. Tradler, 100 So. 3d 735, 738 (Fla. 2d DCA 2012).

Although the former wife is correct that noninterspousal gifts like those from her mother are treated as nonmarital assets, see § 61.075(6)(b)(2), that does not end the inquiry. Nonmarital assets may lose their nonmarital character and become marital assets where, as here, they have been commingled with marital assets. Abdnour v. Abdnour, 19 So. 3d 357, 364 (Fla. 2d DCA 2009). This is especially true with respect to money because "[m]oney is fungible, and once commingled it loses its separate character." Pfrengle v. Pfrengle, 976 So. 2d 1134, 1136 (Fla. 2d DCA 2008); see also Belmont v. Belmont, 761 So. 2d 406, 408 (Fla. 2d DCA 2000) ("Money loses its nonmarital character when it is commingled with marital money. . . .").

That principle resolves the matter from a legal perspective. The record evidence supports the trial court's factual finding that the proceeds of the gifts were commingled with proceeds that were marital assets, and the former wife does not dispute that finding here. Competent, substantial evidence therefore demonstrates that

the gifts lost their nonmarital character and, as a matter of law, they became marital assets subject to equitable distribution.  See, e.g., Abdnour, 19 So. 3d at 364 ("Any assets that previously might have been said to have any nonmarital character were dissolved into the commingled cash account."); Pfrengle, 976 So. 2d at 1136 ("When Pfrengle commingled marital and nonmarital funds in his personal account, all the funds in that account lost their separate nonmarital character."); Struble v. Struble, 787 So. 2d 48, 50 (Fla. 2d DCA 2001) ("Once the sales proceeds were deposited into the joint account, their nonmarital character was lost.").

The former wife also testified at trial that the CenterState account was intended for her retirement and that the initial designation of the account as a joint account was a mistake.  Even if the account had been titled solely in the former wife's name originally, however, our decisions reject the notion that nonmarital funds that have been commingled with marital funds retain their nonmarital character simply because the account in which they are kept is titled in the name of only one spouse.  See, e.g., Abdnour, 19 So. 3d at 364 ("Although the Husband points out that all of the brokerage accounts other than the Janus account were titled in his name alone, this fact is not relevant."); Pfrengle, 976 So. 3d at 1136 (rejecting the argument that "commingling can occur only when funds are deposited in a joint account"); Steiner v. Steiner, 746 So. 2d 1149, 1150 (Fla. 2d DCA 1999) ("Even if an account is titled in one spouse's name alone, it may become marital if both marital and nonmarital funds are commingled in that account.").  Whether the account was titled individually or jointly thus makes no difference to our consideration.  Either way, during the course of the marriage the cash gifts were commingled with marital assets.  They are therefore marital assets.

- 4 -

Furthermore, there was evidence at trial that contradicted the former wife's assertion that the initial joint title of the account was a mistake and that the proceeds were always intended to remain her separate assets. The former husband testified that the former wife never had his consent to change the title on the account. That testimony, taken together with the timing and nondisclosure of the former wife's change of title to the account, her subsequent removal of the former husband from the account altogether, and her transfer of $78,000 from the account to her mother shortly after the parties' separation conflicts with the former wife's explanation that the gifts were always intended to be her separate, nonmarital property. The evidence was sufficient to permit the trial court to reject her assertions that the proceeds of the CenterState account were intended solely for her retirement and that it was a mistake to title the account jointly.

Finally, the former wife argues that the cash gifts should not be considered marital assets because there is no evidence that the proceeds in the CenterState account were used to pay marital expenses. She concedes that it was her burden to show that the gifts were nonmarital. See § 61.075(6)(a)(3). The absence of such evidence thus weighs against the former wife having carried her burden, rather than the other way around. Moreover, our cases have not required that commingled funds must be used to pay marital expenses in order to be treated as entirely marital; it is enough that the funds be commingled. See Pfrengle, 976 So. 2d at 1136 (holding that commingled funds were marital because they were not maintained separately and thus that the nonmarital funds "lost their separate nonmarital character"); Struble, 787 So. 2d at 50 (holding that proceeds from the sale of a nonmarital asset became marital when deposited into an account containing marital funds). Accordingly, the trial court did not

err in determining that that the cash gifts were marital assets subject to equitable distribution.

### *Inclusion of Dissipated Proceeds*

In the final judgment, the trial court equitably divided the CenterState account, including the cash gifts, based on a value of $121,196 at the time of separation. The former wife asserts that this was error because, by the time of trial, those proceeds had been dissipated by $119,319 to a balance of $1887. Of the dissipated proceeds, the former wife transferred $78,000 to her mother, used $12,500 to purchase a certificate of deposit titled in her name (and not disclosed in her financial affidavits), and withdrew $6000 from the account—all within twenty days of the parties' separation. The former wife testified that the remaining $22,819 was used for her support while the divorce case was pending.

We review the trial court's equitable distribution decisions for abuse of discretion and examine its valuation of marital assets to determine whether it is supported by competent, substantial evidence. Tradler, 100 So. 3d at 738. Even under that standard, "[a]s a general proposition, it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings." Roth v. Roth, 973 So. 2d 580, 584 (Fla. 2d DCA 2008). There is an exception to this rule, however, where misconduct during the divorce case results in the dissipation of a marital asset. Tradler, 100 So. 3d at 740; Roth, 973 So. 2d at 584-85. To determine whether such misconduct occurred, "the question for the trial court is whether 'one spouse use[d] marital funds . . . for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.' " Roth, 973 So.

2d at 585 (alteration in original) (quoting <u>Romano v. Romano</u>, 632 So. 2d 207, 210 (Fla. 4th DCA 1994)).

There is record evidence from which the trial court could have found that the depletion of the CenterState account was caused, at least in significant part, by misconduct. For example, the fact that the $78,000 constituted marital assets, taken together with the former wife's conduct concerning the title of the account and transfer of proceeds to her mother, would support a finding that the depletion of that sum constituted the use of marital funds for purposes unrelated to the marriage. Similarly, the circumstances surrounding the former wife's purchase of a $12,500 certificate of deposit and withdrawal of $6000 within twenty days of the parties' separation would justify a finding of misconduct sufficient to include those sums in an equitable distribution award.

Our cases have consistently held, however, that misconduct must be supported not only by the record evidence, but also by specific factual findings made by the trial court. <u>Tradler</u>, 100 So. 3d at 740-41 ("Without evidence and a specific finding of misconduct, the trial court abuses its discretion in including a dissipated asset in the equitable distribution scheme."). Those findings are absent from this case. Neither the final judgment, nor the trial transcript, nor any other document in the record contains the factual findings of misconduct required to include the dissipated funds from the CenterState account in the equitable distribution scheme.

For that reason, we must reverse the equitable distribution portion of the final judgment. <u>See</u> <u>id.</u> at 741 (reversing judgment where "[a]rguably, the trial court could have made a finding of misconduct based on this evidence, but it did not"); <u>Levy</u>

v. Levy, 900 So. 2d 737, 746 (Fla. 2d DCA 2005) (reversing judgment where "[t]he trial court did not make a finding of fact in the final judgment that the Wife was guilty of misconduct with regard to the depletion or dissipation of the portion of the lump-sum payment that had been spent"); Cooper v. Cooper, 639 So. 2d 153, 155 (Fla. 2d DCA 1994) (reversing judgment where "[t]he final judgment contains no finding that the husband wrongfully depleted the IRA").  On remand the trial court shall recalculate the equitable distribution in keeping with this opinion and, if necessary, shall make findings on the issue of dissipation of assets as required by case law.  See Tradler, 100 So. 3d at 742; Levy, 900 So. 2d at 747.  We note that this reversal may impact other portions of the equitable distribution scheme, and the trial court may readdress any portion of the equitable distribution or related alimony calculations as required.

### *The Closed Bank Account*

The former wife asserts that the trial court erroneously included in the equitable distribution computation $33,392 of proceeds from an older bank account, also opened with CenterState, that was closed before the parties' separation.  At the time that account was closed, the proceeds were deposited in the CenterState account discussed above and included in the $121,196 in that account at the time of separation, all of which the trial court determined to be marital assets subject to equitable distribution.  The former husband concedes that the former wife is correct on the facts and presents no argument that the proceeds formerly in the old account should be included twice in the equitable distribution of marital assets.  On remand the trial court must not double-count the $33,392 from the old account in the new equitable distribution calculations.

### *Retroactive Alimony*

The trial court awarded the former wife $400 per month in permanent, periodic alimony. She asserts that the trial court erred by failing to make that award retroactive to the date of her petition for dissolution of marriage. The record, however, reveals that the former wife did not request retroactive alimony in the petition, at the hearing, in her motion for reconsideration, or in any other document in the record. The former wife has no basis to raise this issue for the first time on appeal. See Cuevas v. Kelly, 873 So. 2d 367, 373 (Fla. 2d DCA 2004) (stating that parties are precluded from raising issues not raised in the trial court for the first time on appeal); cf. Martinez v. Abinader, 37 So. 3d 944, 946 n.2 (Fla. 2d DCA 2010) (holding that issue of retroactive alimony was preserved where raised on the record at trial). For that reason, this aspect of the final judgment is affirmed.[1]

### *Conclusion*

We find no error in the equitable distribution award to the extent that it determined that the $78,000 of cash gifts were marital assets and declined to award retroactive alimony to the former wife. We nevertheless reverse the equitable distribution award because the trial court included the dissipated proceeds of the CenterState account in the equitable distribution calculation and double-counted the $33,392 in the closed bank account. We therefore remand for the trial court to recalculate the equitable distribution and to make any necessary factual findings as to

---

[1]To the extent that our remand for reconsideration of the equitable distribution calculation may cause the trial court to revisit alimony on remand, we note that determinations concerning retroactive alimony are required to be supported by findings as to need and ability to pay. See Valentine v. Van Sickle, 42 So. 3d 267, 274 (Fla. 2d DCA 2010); Alpert v. Alpert, 886 So. 2d 999, 1002 (Fla. 2d DCA 2004).

whether the dissipation of the CenterState account proceeds was caused by the former wife's misconduct, adjusting the equitable distribution and alimony calculations as necessary in light of those findings, and for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded.

VILLANTI, C.J., and MORRIS, J., Concur.