NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTHONY V. DISTEFANO,　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　Appellant,　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　　　）　　　　Case No.　2D17-967
　　　　　　　　　　　　　　　　　　　）
ANDREA L. DISTEFANO,　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　Appellee.　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
_____)

Opinion filed August 15, 2018.

Appeal from the Circuit Court for
Hillsborough County; Martha J. Cook,
Judge.

Paul J. Phipps of the Law Office of Amber
Boles, P.A., Tampa (withdrew after
briefing); Alexis Fields of Kopelowitz,
Ostrow, Ferguson, Weiselberg, & Gilbert,
Ft. Lauderdale (substituted as counsel of
record), for Appellant.

Allison M. Perry of Florida Appeals, P.A.,
Tampa, for Appellee.


BADALAMENTI, Judge.


　　　　　　Anthony Distefano (former husband) seeks review of a final judgment

dissolving his marriage to Andrea Distefano (former wife) entered after a bench trial.

After careful review, we reverse the final judgment to the extent it classifies the family

home and a Toyota Camry purchased during the marriage as the former wife's nonmarital property.

Approximately one month after the couple married, the former wife sold a home she had purchased prior to the marriage (the Hartnett home). The $62,232.23 profit the former wife received from the sale of the Hartnett home was deposited into personal checking and savings accounts she, as sole owner, held at Suncoast Federal Credit Union. The former wife testified that she used her Suncoast personal checking and savings accounts both before and during her marriage to the former husband. She noted, "I've always, I mean, I've always written bills from, from these accounts." She explained that she had "written bills," like the mortgage, car loans, and insurance for herself and the former husband, from the Suncoast personal bank accounts. She further testified that paychecks she earned during the marriage were deposited into her personal Suncoast checking account. Approximately five months after the couple married, the former wife utilized funds from her Suncoast checking and savings accounts to make a down payment on what would become the home where she, the former husband, and their infant child would reside (the Clendenning home). She explained that the Clendenning home, which was titled in her name only and secured by a mortgage also taken out by her, was not intended to be a gift to the former husband.

Also during the marriage, the former wife purchased a 2014 Toyota Camry. To partially fund that purchase, the former wife both traded in a vehicle that she owned prior to the marriage and used funds from the Suncoast checking account. She secured a car loan for the difference owed for that purchase.

In its final judgment, the trial court classified the Clendenning home as the former wife's nonmarital asset because a portion of the funds with which the home was purchased could be traced to nonmarital property, namely, the proceeds from the sale of the Hartnett home. Similarly, the trial court classified the Toyota Camry as nonmarital property because a portion of the funds used to purchase it could be traced to proceeds from the trade-in value of the former wife's premarital vehicle. As will be explained, the trial court's classification of both the Clendenning home and the Toyota Camry as nonmarital property was error.

"We review a trial court's characterization of an asset as marital or nonmarital de novo and any factual findings necessary to make this legal conclusion for competent, substantial evidence." Dravis v. Dravis, 170 So. 3d 849, 852 (Fla. 2d DCA 2015) (citing Tradler v. Tradler, 100 So. 3d 735, 738 (Fla. 2d DCA 2012)). In section 61.075, Florida Statutes (2015), "[t]he legislature has set forth a statutory scheme to guide the trial court's equitable distribution of assets upon dissolution of a marriage." Nelson v. Nelson, 206 So. 3d 818, 819 (Fla. 2d DCA 2016). Under Florida's equitable distribution statute, marital assets include "[a]ssets acquired . . . during the marriage, individually by either spouse or jointly by them." § 61.075(6)(a)(1)(a). Nonmarital assets, which are not subject to equitable distribution, include "[a]ssets acquired . . . by either party prior to the marriage, and assets acquired . . . in exchange for such assets . . . ." § 61.075(6)(b)(1).

As an initial matter, the trial court properly classified the former wife's personal Suncoast checking and savings accounts as marital assets. This is because, although titled only in the former wife's name, it is undisputed that the former wife

- 3 -

commingled funds she acquired prior to the marriage with funds she acquired during the marriage in her Suncoast checking and savings accounts. See Pfrengle v. Pfrengle, 976 So. 2d 1134, 1136 (Fla. 2d DCA 2008).

With this in mind, we now explain why we agree with the former husband's contention on appeal that the trial court erred by classifying the Clendenning home as a nonmarital asset. First, it is undisputed that the Clendenning home was acquired during the marriage individually by the former wife. It thus falls squarely within the meaning of marital assets as set forth by the plain and ordinary language of the equitable distribution statute. See § 61.075(6)(a)(1)(a) (setting forth that marital assets include "[a]ssets acquired . . . during the marriage, individually by either spouse or jointly by them") (emphasis added). Second, it is undisputed from the record that the former wife utilized marital funds from her personal Suncoast checking and savings accounts to place a down payment on the home, to make mortgage payments for that home, to make car payments for both herself and her former husband, and to cover other expenses incurred during their marriage. Once the former wife commingled the sale proceeds from the Hartnett home with the paychecks she earned during the marriage into her personal Suncoast accounts, all the funds in those accounts became marital assets. See Pfrengle, 976 So. 2d at 1136; see also Dravis, 170 So. 3d at 852 ("Nonmarital assets may lose their nonmarital character and become marital assets where, as here, they have been commingled with marital assets." (citing Abdnour v. Abdnour, 19 So. 3d 357, 364 (Fla. 2d DCA 2009))); Steiner v. Steiner, 746 So. 2d 1149, 1151 (Fla. 2d DCA 1999) ("Once the funds were commingled and used for joint expenses, they lost their separate character and became untraceable."). This, in turn,

made the Clendenning home a marital asset subject to equitable distribution pursuant to section 61.075(1).

In Pfrengle, we reversed the trial court's classification of several real properties acquired by the former husband during the marriage as nonmarital property. 976 So. 2d at 1136. The trial court reasoned that because the former husband made down payments on new properties utilizing the profits he received from the sale of properties he owned prior to entering the marriage, the new properties were not marital property. Id. On appeal, we rejected the former husband's argument that because the sum total of the properties he purchased was less than the aggregate profits he received from the sale of his premarital properties, they should be classified as nonmarital property. We reasoned that although the former husband maintained separate accounts through which he purchased the properties, it was undisputed that he transferred money to and from all of the accounts, including his personal checking account, where he had deposited sales commissions he earned during the marriage. Id. In Pfrengle, we expressed the importance of maintaining nonmarital and marital assets separately, especially money held in bank accounts. Id. ("Money is fungible, and once commingled it loses its separate character." (citing Belmont v. Belmont, 761 So. 2d 406, 408 (Fla. 2d DCA 2000))).

We explained that once the former husband commingled both money from the sale of his premarital properties with commissions he earned as a sales representative during the marriage in his personal checking account, it made all the money held in the personal checking account a marital asset. Id. And because the down payments for the properties purchased during the marriage were made, in part,

from the former husband's personal checking account containing marital assets, those properties also became marital assets. Id.

Here, like the former husband in Pfrengle, the former wife owned real estate prior to entering the marriage, sold that real estate during the marriage, deposited the profit of that sale into her personal bank accounts, and then utilized that profit to make a down payment on new real estate. Also like the former husband in Pfrengle, the former wife's employer deposited the income she earned from working during the marriage into the same personal bank account she had deposited the profit from the sale of her home. Based on the former wife's own testimony, her personal Suncoast checking and savings accounts were used to make a down payment on the Clendenning home and to pay expenses incurred by her and the former husband during the marriage, like their car loans, insurance, and mortgage.

As Pfrengle instructs us, the commingling of the money the former wife earned from the sale of the Hartnett home with income she earned during the marriage transformed the very character of what once were her personal bank accounts into marital assets.[1] See id. (holding that the trial court erred in classifying certain properties as nonmarital assets because the properties at issue were purchased during the marriage using funds taken from an account containing commingled marital funds and therefore the properties purchased became marital assets as a matter of law); cf. Steiner, 746 So. 2d at 1151 (concluding that because the former husband's bank account became marital when he deposited his earnings into that account, principal

_____

[1]It is noteworthy that our conclusion is further supported by the joint equitable worksheet attached to the final judgment here, which classifies the Suncoast checking and savings accounts as marital assets.

- 6 -

mortgage reductions paid out of that account also became marital assets). In sum, the Clendenning home is a marital asset because it was acquired during the marriage with commingled funds from the former wife's personal checking and savings accounts.

Next, the former husband argues that the trial court further erred by classifying the 2014 Toyota Camry as the former wife's nonmarital asset. For the same reasons we reverse the classification of the Clendenning home as a nonmarital asset, we reverse this classification. Again, the Toyota Camry is a marital asset pursuant to section 61.075(6)(a)(1)(a) because it was acquired by the former wife during the marriage, in part, with commingled money held in the former wife's Suncoast checking account containing marital funds. See Dravis, 170 So. 3d at 852. Because the former wife used marital funds to purchase the Toyota Camry, it thus follows that the Toyota Camry is also a marital asset subject to equitable distribution. See Pfrengle, 976 So. 2d at 1136; see also Struble v. Struble, 787 So. 2d 48, 50 (Fla. 2d DCA 2001) (concluding that the trial court erred in classifying the former wife's 1995 Toyota as her separate nonmarital asset because the vehicle was purchased by the former wife during the marriage using funds from a bank account that contained marital money). Accordingly, we reverse the final judgment to the extent it classifies the Toyota Camry as the former wife's nonmarital asset.

As a final matter, the former husband argues, and the former wife laudably concedes, that the final judgment contains an internal inconsistency as it relates to the former husband's responsibility to repay in full a $10,000 loan the former wife made to Tonand Enterprises, LLC, an entity the parties formed together prior to their marriage. In section G of the final judgment, the trial court determined that the former husband is

responsible for 100% of the debt incurred by Tonand Enterprises, LLC. However, in section H, the trial court determined that the former husband and former wife are each 50% responsible for the $10,000 loan the former wife made to Tonand Enterprises, LLC. The joint equitable distribution worksheet reflects that each party is responsible for paying $5000. Based on the internal inconsistency created by sections G and H of the final judgment, we reverse and remand for the trial court to correct this inconsistency in its judgment. See Suk v. Chang, 189 So. 3d 224, 226 (Fla. 2d DCA 2016) ("[D]issolution judgments that contain internal inconsistencies must be reversed so the inconsistencies can be corrected.").

In sum, we reverse the final judgment's classification of the Clendenning home and the Toyota Camry as nonmarital assets. We remand to the trial court with instructions to classify them as marital assets and revise the equitable distribution scheme accordingly. See Pfrengle, 976 So. 2d at 1136. In so reversing, we express no opinion as to the trial court's redistribution, in its discretion, of marital assets in light of our opinion. We also reverse and remand to the trial court with instructions to correct the final judgment as it relates to the internal inconsistency created by sections G and H of the final judgment.[2] See Suk, 189 So. 3d at 226.

Affirmed in part; reversed in part; remanded with instructions.

LaROSE, C.J., and BLACK, J., Concur.

---

[2]We affirm without comment the remaining issues raised by the former husband in this appeal.