# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

—————————————————

Case No. 5D2022-0686
LT Case No. 2020-DR-000112-A

—————————————————

JAMES PHILLIP KINCAID,

    Appellant,

    v.

DEBRA KINCAID,

    Appellee.

—————————————————

On appeal from the Circuit Court for St. Johns County.
Christopher S. Ferebee, Judge.

Michael L. Duncan, of Duncan Trial & Mediation, Jacksonville,
for Appellant.

Corrine A. Bylund, Jacksonville, for Appellee.


December 5, 2024

MACIVER, J.

    James Kincaid ("Husband") appeals multiple decisions made
by the trial court concerning the dissolution of his marriage to
Debra Kincaid ("Wife"). Husband argues the trial court erred in its
determination of both equitable distribution and alimony,
unlawfully favoring Wife in both. We agree that certain rulings by
the trial court were error.

# BACKGROUND

Husband and Wife were married in 1999. They raised two children in common along with Wife's son from a prior relationship. Husband filed for divorce in 2020.

At a trial in April 2021 to determine alimony and equitable distribution, the following evidence relevant to this appeal was adduced:

*Income*—Husband was the primary wage earner during the marriage. His gross monthly income was $10,000, and in 2020 he received a $3,000 bonus in addition to his salary. His monthly net income was $7,722.86. Wife was working at the time of the divorce—around thirty-two hours per week, earning $20.16 per hour—but there were times during the marriage when she did not work outside the home. Her net income for 2020 was $33,406.92.

*Monthly Expenses*—Factoring out Wife's expenses, Husband claimed his monthly expenses for himself and the children totaled $9,244.26. Wife claimed her monthly expenses totaled $6,000.

*Automobiles*—The parties had three automobiles: a 2018 Honda, a 2010 Toyota, and a 2014 Mazda.

*Bank Accounts*—The parties had multiple Wells Fargo cash accounts. Throughout the marriage, Husband's income was deposited into one of the parties' joint accounts. Wife deposited twenty to thirty percent of every paycheck she earned into her individual bank accounts. The parties' children—sixteen and eighteen years old at the time of the hearing—also had individual accounts with Wife as the secondary account holder.

*Retirement Accounts*—Husband had two premarital retirement accounts, one standard and one Roth IRA, totaling $57,432.44. In 2010 he had rolled both accounts over to Morgan Stanley IRAs, and he continued contributing to the IRAs during the marriage. Wife also had IRA accounts with Morgan Stanley that originated in 2010.

*Life Insurance*—Husband had life insurance through his employer with a death benefit of one million dollars.

*Loans*—While married, Wife borrowed around $70,000 from her father to help with finances and pay her son's legal fees. There were no terms to the loan, nor any promissory note or written agreement associated with it. A week or two before Husband announced he was filing for divorce and without his knowledge, Wife withdrew $74,890 from her individual bank account and sent it to her father in repayment of the loan. Wife also loaned an undetermined amount to her son's girlfriend, Michelle Gorman (the "Gorman loan"). Husband testified that he was unsure whether the loan had been paid or repaid and so he was not amenable to the trial court awarding it to him as an asset.

The trial court rendered a Final Judgment of Dissolution of Marriage in June 2021 (the "Final Judgment"). The trial court equally divided the parties' two joint bank accounts. It found Husband's gross income in 2020 to be $118,575, and Wife's to be $37,190. It found Wife's monthly expenses to be $4,000 and awarded her permanent alimony of $1,750 per month based on her need and Husband's ability to pay. Finding insufficient evidence to establish passive and non-passive appreciation of the IRAs, the trial court found Husband's rollover of $57,432.44 from his premarital retirement accounts to be nonmarital, and equally divided the remainder of the IRAs between the parties. Without assigning a value to any of the vehicles, the trial court awarded the 2018 Honda to Husband, the 2010 Toyota to Wife, and the 2014 Mazda to their adult daughter, with Husband responsible for any liability associated with it. Finally, the trial court found that Husband had life insurance "reasonably available to him" and ordered Husband to secure his alimony obligation to Wife through a one-million-dollar life insurance policy.

Husband moved for a rehearing, and the trial court granted a rehearing on, among other things, the issue of awarding passive growth on Husband's IRA rollovers. At the rehearing, Husband testified that in 2010 he rolled a premarital Roth IRA worth $17,620 into a Morgan Stanley Roth account, as well as $39,812.44 from a Thrift Savings Plan into a Morgan Stanley Traditional IRA. At the same time, he rolled about $150,000 of marital retirement

3

accounts into the Traditional IRA and $16,000 into the Roth IRA. From the time Husband rolled over his accounts through 2020, the Morgan Stanley Traditional IRA had a 6.36 percent rate of return, and the Roth IRA had a 5.69 percent return. Husband did not direct the investments in these accounts in any way. The marital funds added to the Morgan Stanley IRAs were managed the same way as his premarital funds. As a result, Husband argued he should be awarded the passive return on the premarital funds rolled into the Morgan Stanley IRAs.

Following the rehearing, the trial court affirmed its original findings in an order entered in October 2022. It noted that "money is fungible and loses its separate character once commingled." It also noted that at trial, a performance summary of the IRAs was introduced by stipulation as part of a large volume of documents, but no testimony had been presented regarding the performance summary to help it determine any extrapolated value of the potential nonmarital passive appreciation of the funds. The trial court found no basis to revisit the equitable distribution determination previously made.

That same day, the trial court rendered its Supplemental Findings as to the Final Judgment of Dissolution (the "Supplemental Findings"). The trial court clarified that although only gross income was noted in its Final Judgment, net income was used in determining need and ability to pay alimony. Specifically, it found that Husband's net monthly income after taxes and health insurance was $8,224,60. It found his monthly expenses were $6,740.10, resulting in a monthly surplus of $1,484.50. However, it also found that Husband, "despite claiming a substantial monthly deficit in his financial affidavit, has been able to save significant amounts of money throughout the marriage" and thus had the ability to pay slightly more than the monthly surplus amount. Based on these findings, the trial court reaffirmed the previously awarded amount of $1,750 in alimony. This appeal followed.

## ANALYSIS

### 1. *Equitable Distribution*

4

A trial court's equitable distribution is reviewed for abuse of discretion and also to determine whether its valuation of marital assets was supported by competent, substantial evidence. *Palmer v. Palmer*, 316 So. 3d 411, 414 (Fla. 5th DCA 2021) (quoting *Dravis v. Dravis*, 170 So. 3d 849, 853 (Fla. 2d DCA 2015)). But this Court reviews a trial court's characterization of an asset as marital or nonmarital de novo. *Id.* (citing *Neiditch v. Neiditch*, 187 So. 3d 374, 375 (Fla. 5th DCA 2016)).

When determining equitable distribution between former spouses, a trial court is statutorily required to "set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution." § 61.075(1), Fla. Stat. (2022). As our sister court explained, "Assets acquired during the marriage by either spouse individually or by both spouses jointly are marital assets. But assets acquired by either party before the marriage are nonmarital assets. In distinguishing between marital and nonmarital assets and liabilities, the trial court must make written findings of fact." *McGowan v. McGowan*, 344 So. 3d 607, 611 (Fla. 1st DCA 2022) (citations omitted).

Further, in a contested dissolution action in which a stipulation and agreement has not been reached, any distribution of marital assets or marital liabilities must be supported by factual findings in the final judgment based on competent substantial evidence. The specific written findings of fact must clearly identify nonmarital assets and ownership interests; identify marital assets, including the individual valuation of significant assets, and designate which spouse is entitled to each asset; identify the marital liabilities and designate which spouse is responsible for each liability; and state any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities. § 61.075(3)(a)–(d), Fla. Stat.

Marital assets include "[t]he enhancement in value and appreciation of nonmarital assets resulting from the efforts of either party during the marriage or from the contribution to or

expenditure thereon of marital funds or other forms of marital assets, or both." *Id*. § 61.075(6)(b). They also include "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs." *Id*. § 61.075(6)(a)(1)(e).

Nonmarital assets may lose their nonmarital character and become marital assets if they have been commingled with marital assets. "This is especially true with respect to money because '[m]oney is fungible, and once commingled it loses its separate character.'" *Dravis*, 170 So. 3d at 852 (citations omitted). *See also Pfrengle v. Pfrengle*, 976 So. 2d 1134, 1136 (Fla. 2d DCA 2008); *Belmont v. Belmont*, 761 So. 2d 406, 408 (Fla. 2d DCA 2000) ("Money loses its nonmarital character when it is commingled with marital money. . . .").

Here, Husband contends that the trial court erred in its equitable distribution in three ways.

First, he claims the trial court should have classified the Gorman loan and Wife's individual bank accounts as marital. As to the Gorman loan, at trial Husband testified that he could not say if the Gorman loan was an asset and so he was reluctant to accept it as an asset. The parties did not stipulate nor did the trial court make a finding of fact in its Final Judgment as to the nature of the Gorman loan. We remand to the trial court to take further evidence to assess its value and determine whether it is a marital or nonmarital asset.

As to the bank accounts, Wife concedes that the trial court erred regarding equitable distribution of the individual accounts. In its Final Judgment the trial court only acknowledged the two joint accounts the parties held, but not the other nine accounts they held or where they were named as secondary account holders. This directly contravenes section 61.075(3), warranting reversal on this issue so that a determination regarding the marital nature and value of the remaining accounts can be made for purposes of equitable distribution.

6

Second, Husband claims the trial court should have assigned values to the parties' three automobiles and the associated debt thereon. Vehicles are "significant assets" for purposes of valuation under section 61.075(3)(b). *See Pierre v. Pierre*, 185 So. 3d 1264, 1265 (Fla. 4th DCA 2016). Wife concedes that the vehicles were not properly evaluated, and the trial court had no authority to award one of the vehicles to their adult daughter. Further, section 61.075(1) provides that the trial court is to distribute marital assets and liabilities *between the parties* (emphasis added). There was no evidence presented at trial, nor do Husband or Wife claim on appeal, that their adult daughter owned the vehicle she was awarded or that it was gifted to her. As a result, the vehicle is presumed to be a marital asset because it was purchased during the parties' marriage. These errors warrant reversals for the trial court to determine the value and associated debt of all three vehicles as part of the equitable distribution of marital assets and debts.

Third, Husband argues the trial court incorrectly found that passive appreciation of the IRA accounts had not been established. He claims the appreciation of the nonmarital portions of the IRA accounts was not due to any marital efforts and all monies in the IRA accounts received the same investment treatment, so the nonmarital appreciation should have been considered a nonmarital asset. Additionally, there were two rollovers: one into a Traditional IRA, and one into a Roth IRA. Husband argues that because the trial court directed that the combined total of these rollovers be considered the nonmarital portion of Husband's Traditional IRA, he would lose the favorable tax result of the Roth IRA.

Husband simultaneously rolled two premarital IRAs as well as marital retirement accounts and marital funds into a new Roth IRA and a new Traditional IRA. A precise valuation of the marital portion of the two new IRAs requires that the appreciation of the premarital portion be calculated separately from that of the marital portion. *See Abdnour v. Abdnour*, 19 So. 3d 357, 361 (Fla. 2d DCA 2009). The burden of proof on the accumulated value of the two IRAs is on the spouse asserting the claim. *Id.* In *Abdnour*, to prove the appreciated value of both the premarital portion and the marital portion of an account, the husband sought to admit

7

into evidence a spreadsheet that he had prepared along with the account statements for the applicable period. *Id*. He then testified that the annual compound appreciation on the account amounted to 2.312 percent during the applicable period; he did not offer any expert opinion testimony to confirm his calculations. *Id*. The trial court excluded the spreadsheet as evidence, admitted the account statements by stipulation, and found that the husband's analysis and calculation of the passive appreciation was flawed. *Id*. The trial court ruled that the total postmarital increase in the value of the account was marital property subject to equitable distribution, which was affirmed. *Id*.

Similarly, here at trial Husband provided a "performance summary" of the new IRAs showing the rates of return on the two new IRAs from the time of their inception to the date of trial. Husband did not offer any testimony—expert opinion or otherwise—to support his claim to appreciation of the nonmarital appreciation but relied solely on the documents he provided. The trial court found the passive appreciation to be a marital asset. At the rehearing, Husband testified to the different rates of return on the accounts but offered no expert testimony. The trial court noted that no evidence had been presented at trial regarding the performance summary to help it determine any extrapolated value of the potential nonmarital passive appreciation of the funds, and no basis existed to revisit the equitable distribution determination on rehearing.

The trial court was within its discretion to find that Husband failed to adduce competent substantial evidence of the nonmarital value of the passive appreciation in the IRAs. Further, other than his conclusory statement, Husband has failed to establish how he would lose any favorable tax status on the Roth IRA. We therefore affirm this award.

## 2. *Alimony Award*

An alimony award is reviewed under the abuse of discretion standard. *Saario v. Tiller*, 333 So. 3d 315, 320 (Fla. 5th DCA 2022).

When deciding whether to award alimony, a trial court must first make a specific factual determination as to whether one party

has an actual need for alimony and the other party has the ability to pay alimony—and this determination must be based on the parties' net incomes. *See* § 61.08(2), Fla. Stat. (2022); *Crouse v. Crouse*, 368 So. 3d 6, 8 (Fla. 4th DCA 2023). An alimony award may not leave the payor with significantly less net income than the net income of the recipient unless there are written findings of exceptional circumstances. § 61.08(9), Fla. Stat. Any supplemental findings of a trial court are considered along with its final judgments and orders. *See Wallace v. Torres-Rodriguez*, 341 So. 3d 374 (Fla. 3d DCA 2022); *McLaughlin v. Debord*, 14 So. 3d 1222 (Fla. 4th DCA 2009); *Gurrentz v. Fed. Kemper Life Assurance Co.*, 513 So. 2d 241 (Fla. 4th DCA 1987).

Here, Husband contends that the trial court erred in three ways in its alimony award.

First, Husband argues the trial court erred in finding he had the ability to pay permanent monthly alimony of $1,750, because in the Final Judgment the trial court based the award on the parties' gross income, not net income. Although the trial court denied Husband's motion for rehearing on this issue, in its Supplemental Findings the trial court clarified that net income was used in determining Wife's need and Husband's ability to pay alimony in its judgment. It then detailed how those net numbers supported its original findings. Because we reverse the alimony award, we do not need to reach this issue.

Second, Husband argues that when determining the amount of alimony, the trial court wrongly gave Wife credit for monthly expenses not supported by competent, substantial evidence. In its Final Judgment the trial court made a nebulous finding about Wife's living expenses: "[t]he Wife lacks the financial ability to meet her needs and necessities of life following this dissolution of marriage." But in its Supplemental Findings the trial court elaborated on its calculation of Wife's expenses, explaining that it based its findings on her financial affidavit, less specific line items that it removed for various, articulated reasons. Because the trial court's detailed analysis as to how it arrived at its sum of alimony is supported by the record, this Court affirms on this issue.

9

Third, Husband argues the trial court improperly found that he had the ability to pay $1,750 in monthly alimony, when he had a net monthly income of $8,224.60 but monthly expenses of $6,740.10—leaving him a surplus of only $1,484.50. Wife concedes error on this issue and this Court has recently reversed where a trial court awarded more monthly alimony to the former wife than the former husband possessed in surplus. *See Hawryluk v. Hawryluk*, 365 So. 3d 477, 478 (Fla. 5th DCA 2023). There, despite properly considering the former husband's net income and determining he had a monthly surplus of $6,000, the trial court awarded the former wife $6,350 in monthly alimony. *Id*. It did so without making clear in the record how it came to such a decision. "Because the aggregate monthly payments would exceed the amount that the court found to be Former Husband's monthly surplus . . . we reverse and order a recalculation of the payment schedule that would bring the monthly aggregate payment within the range of Former Husband's estimated monthly surplus of $6,000." *Id*.

The similarities here to *Hawryluk* are clear: (1) the trial court found Husband possessed a certain net income—$8,224.60; (2) the trial court determined the monthly surplus Husband would enjoy from that net income—$1,484.50; (3) the trial court then ordered Husband pay monthly alimony about three hundred dollars in excess of that surplus, without properly explaining its rationale. As in *Hawryluk*, this error warrants reversal and remand for a recalculation of the payment amount to bring Husband's alimony payments within the range of his monthly surplus.

### 3. Life Insurance Award

Lastly, Husband argues that the trial court erred in requiring him to maintain life insurance to secure his alimony obligation, without making special findings. We review a trial court's order requiring that a party maintain life insurance for abuse of discretion. *Jimenez v. Jimenez*, 211 So. 3d 76, 79 (Fla. 4th DCA 2017) (citing *Gepfrich v. Gepfrich*, 510 So. 2d 369, 370 (Fla. 4th DCA 1987)).

A trial court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy "[t]o the

extent necessary to protect an award of alimony." § 61.08(3), Fla. Stat. Generally, a life insurance award is appropriate "only when 'the recipient spouse is disabled, elderly, or has such limited employment skills that the death of the former spouse would cause the survivor to depend upon welfare or the generosity of others.'" *Kvinta v. Kvinta*, 277 So. 3d 1070, 1074 (Fla. 5th DCA 2019) (quoting *Lapham v. Lapham*, 778 So. 2d 487, 489 (Fla. 5th DCA 2001)). In an order requiring a life insurance award, a trial court must make findings as to the cost of insurance, the amount being required, and any special circumstances[1] justifying the need for a former spouse to maintain the policy. *Brunsman v. Brunsman*, 232 So. 3d 1175, 1177 (Fla. 5th DCA 2017). Failure to make these findings warrants reversal.

Here, the only finding by the trial court was that Husband had life insurance "reasonably available to him." Availability of life insurance does not constitute its necessity, and Wife established no need for life insurance to secure her alimony award.[2] This Court remands on this issue for the trial court to determine whether special circumstances exist to re-order the life insurance award.

---

[1] "Such special circumstances include a spouse potentially left in dire financial straits after the death of the obligor spouse due to age, ill health and/or lack of employment skills, obligor spouse in poor health, minors living at home, supported spouse with limited earning capacity, obligor spouse in arrears on support obligations, and cases where the obligor spouse agreed on the record to secure an award with a life insurance policy." *Alpha v. Alpha*, 885 So. 2d 1023, 1034 (Fla. 5th DCA 2004) (citations omitted).

[2] The statutory language in place at the time this action was before the trial court implicitly required the trial court to make a finding of necessity before ordering Husband to maintain life insurance. The newest version of this statute, effective July 1, 2023, makes this requirement explicit: "The court must make specific findings that there are special circumstances that warrant the purchase or maintenance of a life insurance policy or a bond to secure the alimony award." § 61.08(4) Fla. Stat. (2023).

In sum, we reverse and remand for the trial court to (1) determine whether the bank accounts not addressed in the Final Judgment are marital and then properly designate them between the parties; (2) evaluate all three marital vehicles and equitably distribute them between the parties; (3) recalculate the payment schedule to bring Husband's alimony payments within the range of his monthly surplus; and (4) determine whether special circumstances exist to require Husband to secure the alimony award with a life insurance policy. As to all other matters, we affirm.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

EDWARDS, C.J., and WALLIS, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____